## JOSEPH LANDA V. JACOB OBERT.

### No. 6180.

**1. Duress—Pleadings.**—See allegations held sufficient, setting up as cause of action that by duress and fraud defendant had induced a settlement whereby he obtained money and the surrender of two promissory notes and receipt of an account through fear of arrest and prosecution induced by the defendant, whereby the free action of the will of plaintiff was controlled in making such settlement,

**2. Limitations—Suspension by Constitution of 1869.**—That a money obligation was completely barred before the adoption of the Constitution of 1869, suspending the statute, does not have the effect of excepting such obligation from the operation of the Constitution in effect renewing the same; otherwise upon vesting of title of real estate.

**3. Amendment—Cause of Action—Limitation.**—Original suit for money, notes, and account extorted by duress by defendant from plaintiff. After four years, by amendment, an instrument in writing was alleged, evidencing an agreement of defendant to pay back upon condition, etc. *Held*, that such amendment did not change the cause of action and limitation of two years was not a bar to the action.

**4. Allegations Irrelevant to Cause of Action.**—That others conspired with defendant and details of their conspiracy, that plaintiff had been indicted upon the charges used in extorting the settlement and had been acquitted, or that the defendant had or had not participated in the prosecution, are immaterial. Exceptions should have been sustained to the allegations, and it was error to allow in evidence the proceedings in which plaintiff was indicted, tried, and acquitted.

**5. Demand Before Suit.**—In suing to avoid such settlement and for the money and for the amount, principal and interest, upon the notes extorted, it was not necessary to aver and prove demand by plaintiff before suit.

**6. Construction of Writing—Circumstances.**—It appeared that upon the charge by Landa against Obert of embezzlement, and demand by Landa that Obert was indebted to him (Landa) by reason of such embezzlement, Obert denying the charge, a settlement was made, Obert paying money and delivering Landa's notes and an account in accordance with Landa's demand. Landa executed to Obert a paper stating, "I hereby state that if at any time I shall become convinced that I have not settled correctly I will correct the error." *Held*, that it will be construed that Landa would correct the error if his charges should be disproved in a civil action to which he was a party.

7. .Irrelevant Testimony.—It being in issue what the monthly profits of a mill were from month of April, 1870, to about September 12, 1870, testimony to the profits of the same mill from January, 1861, to November, 1862, was too remote and should have been excluded.

8. Case Adhered to.—Landa v. Obert, 45 Texas, 548, upon *duress*, adhered to. So also Obert v. Landa, 59 Texas, 475.

9. Duress.—It clearly appears from the former opinions of this court delivered in this cause that "fear of illegal imprisonment constitutes duress."

10. Same.—The arrest of an innocent man on the charge of embezzlement for the purpose of collecting a debt from him or for the purpose of extorting money from him that he did not owe would be an unlawful imprisonment.

11. Same.—If Obert was not in fact guilty of embezzlement of Landa's money, and Landa demanded of him the notes and money now in controversy, and intentionally, by any form of expression, induced him to believe that if he failed to comply with his demands he would be prosecuted and imprisoned on that charge, and if the fears of Obert were aroused to such an extent that he surrendered to Landa said money and notes when he owed him nothing to avoid such prosecution, the transaction would be within the meaning of the law and should be set aside.

12. Same.—In such a case we can see no use of discussing or considering what a man of ordinary firmness and intelligence would have done under the same circumstances. The issue seems to be, did Obert yield to an illegal pressure exerted upon him by Landa?

APPEAL from Guadalupe. Tried below before Hon. Geo. McCormick. The opinion contains a very full statement of the case.

*W. M. Rust,* for appellant. —1. The petition must contain a full and clear statement of the cause of action, and neither a court nor a defendant will be required to collate detached parcels of the recitals in a petition in order to supply by the aid of inferences a distinct and material averment which has been clearly omitted in its proper place. Rev. Stats., arts. 1195, 1187; Whitlock v. Castro, 22 Texas, 112; Clegg v. Varnell, 18 Texas, 301.

2. A petition setting up several distinct causes of action, and asking for specific and different relief under each, is multifarious and demurable. Deaderick v. Wilson, 8 Baxt., 108; Wells v. Partridge, 31 N. J. Eq., 362; Van Horn v. Pine, 36 N. J. Eq., 367; Gordon v. Ross, 63 Ala., 363; Liedersdorf v. Bank, 50 Wis., 406; Whipple v. Fuller, 29 Am. Rep., 333; Scott v. Robards, 67 Mo., 289.

3. A petition joining several causes of action calculated to produce confusion, expense, and unreasonable delay is multifarious and is demurable. Story's Eq. Plead., sec. 271; Clegg v. Varnell, 18 Texas, 306; Simmons v. Fairchild, 42 Barb. Am. Law Reg., N. S., 381.

4. A petition is bad. that seeks relief from a contract which the face of the petition shows was made to do an illegal act, and a demurrer should be sustained. Blaisdell v. Fowler, 120 Mass., 447; McGreal v. Wilson, 9 Texas, 428; Lott v. Kaiser, 61 Texas, 673; 7 Wait's Act. and Def., 64–70; Nellis v. Clark, 20 Wend., 24.

5. The petition shall consist of a statement in logical and legal form of the facts constituting plaintiff's cause of action. Conclusions of law should not be pleaded, but the facts from which such conclusions may be deduced. Rev. Stats., art. 1187; Wright v. McKenney, 34 Texas, 570; Thompson v. Eanes, 32 Texas, 191.

6. All transactions prior to and contemporaneous with the settlement and covered by the receipts passed are merged in the settlement so made, and a plea setting up any other account is bad and should have been stricken out. Rockmore v. Davenport, 14 Texas, 602; Self v. King, 28 Texas, 552; 2 Phill. on Ev., 358; Bruner Bros. v. Strong, 61 Texas, 555; Jackson v. Stockbridge, 29 Texas, 395.

7. After a cause of action has become barred by the statute of limitation the defendant has a vested right to rely upon that statute as a defense, and neither a constitutional convention nor the Legislature has power to divest the right and revive the cause of action. Girdner v. Stephens, 1 Heisk., 280; 5 Heisk., 353; Hamilton v. Flinn, 21 Texas, 716; De Cordova v. Galveston, 4 Texas, 470; Luter v. Hunter, 30 Texas, 698; Story v. Runkel, 32 Texas, 401; Hume v. Barry, 15 Wall., 623; Cool. Const. Lim., 365, 369; Sedg. on Stat. and Const. Law, 177; Rockport v. Walden, 54 N. H., 167; 7 Wait's Act. and Def., sec. 4, p. 228.

8. The acquittal of a plaintiff on an indictment charging him with a criminal offense specified in the plea does not seem to be any evidence at all of his innocence, but is only evidence of the fact of the mere rendition of the judgment. 1 Greenl. Ev., Redf. ed., secs. 537, 538; Heldt v. Webster, 60 Texas, 208; Griffin v. Chubb, 7 Texas, 614; 2 Stark. on Sland., *102.

9. Where a defendant has been in no default a demand is a material fact to constitute a cause of action, even as much so as any other fact, and a suit without it is an abuse of the coercive authority of the law. Duncan v. Magette, 25 Texas, 254; 9 Johns. Rep., 361; 2 Greenl. Ev., 308; Reina v. Cross, 6 Cal., 29; Ryerson v. Kauffield, 13 Hun, 387.

10. When evidence is sought to be introduced for the purpose of showing the value of the proceeds of property at a certain period, by proving the value of such proceeds at a period nine years previous, it is irrelevant and inadmissible. Palmer Co. v. Ferrell, 17 Pick., 58.

11. Where the question of fraud is one of the main issues submitted to the jury, the court must instruct the jury what circumstances would constitute such a fraud as the party could properly claim to be relieved against; for it is not every fraud against which the law will relieve, but must be such as is calculated to deceive and mislead. Flack v. Neill, 22 Texas, 256; Jackson v. Stockbridge, 29 Texas, 394; Walter v. Hough, 59 Ill., 375; Eames v. Morgan, 37 Ill., 260; Oldham & Kerr v. Bently, 6 B. Mon., 432; Anderson v. Burnett, 5 How., 105; Bisph. Prin. of Eq., sec. 207, and note; Cool. on Torts, 502; Hoolbrook v. Burt, 22 Pick., 546.

12. The fear of imprisonment which amounts to duress is that of an illegal imprisonment, or an imprisonment under such circumstances as if carried into execution would amount to duress by force. Landa v. Obert, 1 Texas Ct. Rep., 350; Landa v. Obert, 45 Texas, 548; Davis v. Luster, 64 Mo., 43; Harmon v. Harmon, 61 Mo., 229; The State v. Davis, 79 N. C., 603; Alexander v. Pierce, 10 N. H., 497; 1 Pars. on Con., 393; 2 Greenl. Ev., secs. 301, 302.

13. The constraint which takes away free agency and destroys the power of withholding assent to a contract must be one which is imminent and without means of prevention, and be such as would operate on the mind of a person of reasonable firmness of purpose. Landa v. Obert, 1 Texas Ct. Rep., 350; Miller v. Miller, 68 Pa. St., 493.

14. There can be no fraud where all the parties to the transaction are equally informed of all the facts and mutually assent to them. Landa v. Obert, 1 Texas Ct. Rep., 348; Jackson v. Stockbridge, 29 Texas, 498-501; Bisph. Prin. of Eq., sec. 289; Rapalee v. Stuart, 27 N. Y., 310; Bales v. Perry, 51 Mo., 449.

15. Where a man demands money of another as a matter of right, and that other with a full knowldge of the facts upon which the demand was founded has paid a sum, he can never recover back the sum so voluntarily paid. Brisbane v. Dacre, 5 Taunt., 144; Knibbs v. Hall, 1 Esp., 84; Brown v. McKinally, 1 Esp., 269; Cartwright v. Rowly, 2 Esp., 723; Juzan v. Toulmain, 9 Ala., 662.

16. Where an immoral and illegal contract has been executed the law will not interfere in favor of either party; and no action lies to recover back money paid for compounding a crime, especially when the immorality and illegality of the contract must appear from the case made by the plaintiff himself. Wegner Bros. v. Biering & Co., 65 Texas, 506; McGreal v. Wilson, 9 Texas, 426; Robertson v. Marsh, 42 Texas, 149; Collins v. Lane, 80 N. Y., 351; Haynes v. Rudd, 83 N. Y., 251; Black v. Oliver, 1 Ala., 449; Boyd v. Barclay, 34 Am. Dec., 763, and note; Davis v. Sittig, 65 Texas, 497; Pome. Eq., p. 940.

17. The law favors the settlement of disputes and the prevention of litigation, and therefore compromises of doubtful and conflicting rights and claims are not only good and sufficient considerations for agreements but are highly favored in law. Scott v. Warner, 2 Lans., 49; Stewart v. Ahrenfeldt, 41 Denio, 189; Bank v. Blair, 44 Barb., 641, 652.

18. The mere fear of imprisonment from a lawful prosecution can not possibly be regarded as duress; and whether the process is to be initiated before a magistrate or the grand jury, the law so shields it by the oath of the complainant and witnesses, as well as the official oaths and responsibilities of the magistrates, that the danger of imprisonment is too remote and contingent to overcome the will of an innocent person of common firmness; and certainly if a threat of criminal prosecution does not amount to

duress, it is unnecessary to say that the mere threat of a civil suit will not do so. Landa v. Obert, 45 Texas, 547, and authorities; Bosley v. Shannon, 26 Ark., 280; Barrett v. French, 1 Conn., 356; Brown v. Pierce, 7 Wall., 205; Chitty on Con., 8 Am. ed., 193.

19. To constitute duress by a threat of imprisonment for a supposed violation of the criminal law it must be a threat importing an illegal or wrongful imprisonment, or else a resort to the criminal prosecution for an improper purpose or wrongful motive. The fear of imprisonment which amounts to duress is that of illegal imprisonment, or imprisonment under such circumstances as if carried into execution would amount to duress by force. Davis v. Luster, 64 Me., 43; State v. Davis, 79 N. C., 603; Whitfield v. Longfellow, 13 Mo., 146; Eddy v. Herrin, 17 Mo., 348; Harmon v. Harmon, 61 Mo., 229; 2 Greenl. on Ev., secs. 301, 302; 1 Pars. on Con., 393; Alexander v. Pierce, 10 N. H., 497.

20. It seems also to be well settled that for threats of imprisonment to constitute duress they must be accompanied with such circumstances as would indicate a prompt or immediate execution of the threats. Bane v. Detrich, 52 Ill., 21; Lester v. U. M. Co., 1 Hun, 288.

*Shook, Pittman & Vander Hoeven*, also for appellant.

*W. E. Goodrich* and *Waelder & Upson*, for appellee.—1. The plaintiff's amended petition under which this case was last tried being the same in substance as his former pleadings, there being no new cause of action introduced, the exceptions of appellant were properly overruled. All of appellee's claims were properly joined in the same suit. Railway v. Irvine, 64 Texas, 529; Zeliff v. Jennings, 61 Texas, 458; Jones v. George, 56 Texas, 149; Lewis v. Davidson, 51 Texas, 251; Lee v. Boutwell, 44 Texas, 151; Thompson v. Lea, 26 Texas, 614.

2. If the different items for which appellee sues had been made so many different causes of action and suit instituted on each, there would have been a multiplicity of suits which our laws abhor. The amended petition filed April 29, 1886, being merely an amplification of the same claims set up in the original petition filed January 15, 1871, no new cause of action was presented by the former, and no statute of limitations would run after the filing of the original petition. Railway v. Irvine, 64 Texas, 529; Anderson v. Boyd, 64 Texas, 108.

3. On duress. Mitchell v. Zimmerman, 4 Texas, 79, 80; Henderson v. Railway, 17 Texas, 576; 2 Story's Eq., sec. 239; 1 Story's Eq., sec. 193; Story on Const., sec. 506; 3 Wait's Act. and Def., 438; Kerr on Fraud, 143.

Harris v. Carmody, 41 American Reporter, 191, wherein a note is quoted from a Pennsylvania case that "the doctrine which is now approved by the judicial mind, both of this country and of England," is "that any contract produced by actual intimidation ought to be held

void, whether arising from a result of merely personal infirmity or from circumstances which might produce a like effect upon persons of ordinary firmness. And, as said in Kerr on Fraud, 'The absence of professional advice is in such cases a material circumstance, especially if the other contracting party has such aid.'"

4. The controlling questions should be:

(1) Were unlawful means used, as threats of imprisonment, imposition, undue advantage, or the like, in accomplishing the object desired?

(2) Did such means used so overcome the party as to render him incapable of acting freely and voluntarily, and while so overcome did he act without or against his free will?

By what scale of weight or measurement or by what criterion is the question, amount, or size of "ordinary firmness or courage" to be determined? The same man at one time may act with firmness and courage, and at another time, under apparently like circumstances, from some physical or mental or some unknown cause, he may act with great weakness and fear. At one time a body of soldiers, from some unaccountable reason, will become panic stricken and flee at the first fire; upon another occasion the same body of men will enter the very jaws of death and stand firm and unflinching while mangled and slaughtered by shot and shell. Hence we say every case of alleged extortion, like all others, must be determined by its own peculiar circumstances.

If the evidence shows unlawful means used and that thereby the party was overcome and involuntarily yielded to the extortion, then redress should not be denied.

In support of these propositions we submit the following authorities:

"Where a party enters into a contract for fear of loss of life, or for fear of loss of limb, or for fear of mayhem, or for fear of imprisonment, the contract is as clearly void as when it was procured by duress of imprisonment, which is where there is an arrest for an improper purpose without just cause, or where there is an arrest for a just cause but without lawful authority, or for a just cause but for an unlawful purpose, and the rule is that in either of those events the party arrested, if he was thereby induced to enter into a contract, may avoid it as one procured by duress." Baker v. Morton, 12 Wall., 158; Hackett v. King, 6 Allen (Mass.), 58.

After defining duress in accordance with the old doctrine, Mr. Parsons, in his work on Contracts, second edition, volume 1, pages 321 and 322, says: "These distinctions, however, would not now probably have a controlling power in this country, but where the threat, whether of mischief to the person or the property or to the good name, was of sufficient importance to destroy the threatened party's freedom, the law would not enforce any contract which he might be induced by such means to make; and where there has been no actual contract, but money has been extorted by duress

under circumstances which give to the transaction the character of a payment by compulsion, it may be recovered back."

In Taylor v. Jaques, 106 Massachusetts, 291, it is held on an issue whether a note was made under duress that the coercion constituting duress may be by threats of imprisonment inducing a reasonably grounded fear of restraint of liberty, although the amount for which the note is given is actually due to the payee. In order to avail himself of his defense on the ground of duress it was incumbent on the party to prove that he signed the note under a reasonable and well grounded belief, derived from the conduct and declarations of the plaintiff, that if he did not sign it he would be arrested and prosecuted on a criminal charge. Without such a belief or expectation there was no duress.

"Where there is no coercion amounting to duress, but a transaction is the result of moral, social, or domestic force exerted upon a party, controlling free action of his will and preventing any true consent, equity may relieve against the transaction on the ground of undue influence, even though there may be no invalidity at law." 2 Pome. Eq. Jur., sec. 995.

"Upon an issue of duress the inquiry must necessarily be as to the state of mind of the person pleading it, and not as to the existence of some facts, such as acts done or things which are susceptible of demonstration from the senses. Evidence of conversation, acts before, at the time, and after the supposed duress, would be proper to show the state of mind in which the act was done. In the nature of things it is the best evidence of which the case is capable, for no man can swear particularly how another felt at the time he did an act. It is not the mere affair of a person being in prison or under circumstances of hardship that will enable him to avoid an act. Such things may exist and yet no coercion. Hence the necessity of the inquiry as to the state of the plaintiff's mind, and no evidence so proper as his own acts and conversation to show it." Blair v. Coffenan, 5 Am. Dec., 660.

"Where it is claimed that a promise was obtained by duress, and it appears there was no arrest and no actual force used, but simply threats, the question as to duress is ordinarily one of fact and may not be determined as one of law. It is not sufficient to establish duress to show that the threats were uttered; it must be shown that they constrained the will of the promisor and so induced the promise." Dunham v. Griswold, 100 N. Y., 224.

"The mere threat to employ colorable legal authority to compel payment of an unfounded claim is such duress as will support an action to recover back what is paid under it." 6 Am. and Eng. Ency. of Law., 70.

"Although the threat of a lawsuit is not sufficient to avoid a contract, yet it may be taken in consideration by the jury in connection with evidence of fraud." Wells v. Barnett, 7 Texas, 584.

"The ground upon which a contract is voidable for duress is the same

as in the case of fraud, and is whether from a fear or from a belief, the party has been subjected to an improper motive for action." Fairbanks v. Snow, 1 Am. St. Rep., 447.

"When a seaman is induced to assent to his discharge on payment of a nominal sum, from a just apprehension of future ill treatment arising from the misconduct of the master of the vessel, such assent is given under a species of duress and is no bar to a recovery of the amount actually due to him at the time of his discharge." Bates v. Seabury, 1 Sprague, 433.

"We think the opinion of Mr. Evans expresses the doctrine which is now approved by the judicial mind, both of this country and of England— that is, that any contract produced by actual intimidation ought to be held void, whether as arising from a result of merely personal infirmity or from circumstances which might produce a like effect upon persons of ordinary firmness." Jordan v. Elliott, 15 C. L., 232.

"Where a party does an act or makes a contract when he is under duress, or the influence of extreme terror, or of threats, or of apprehensions short of duress. For in cases of this sort he has no free will, but stand *in vinculis*. And the constant rule in equity is that where a party is not a free agent and is not equal to protecting himself the court will protect him. * * * Circumstances also of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, may in like manner so entirely overcome his free agency as to justify the court in setting aside a contract made by him on account of some oppression or fraudulent advantage or imposition attendant upon it." Story's Eq. Jur., 5 ed., sec. 239.

By the facts and the law of this case we earnestly insist that duress by threats of imprisonment has been established; that the charges of fraud, intimidation, undue advantage, and oppression have been maintained; and that upon any or all of these grounds the settlement in question must be set aside.

*Willie, Mott & Ballinger* filed an argument in reply for appellant.

HENRY, ASSOCIATE JUSTICE.—Landa was the owner of a grist mill and Obert was his miller. After this relationship had existed for several years Landa charged Obert with having embezzled money received during his employment, and obtained from him a settlement in which Obert surrendered to Landa two promissory notes which he held against him, paid him an amount of money, and also surrendered to him an open account which he held for his services.

Within a few weeks of the settlement Obert had been indicted on the charge of embezzlement and tried and acquitted.

The settlement was made on the 12th day of September, 1870. The original petition in this cause was filed by Obert on the 9th day of Janu-

ary, 1871. This is the fourth time that the cause has been before this court on appeal from a final judgment. Landa v. Obert, 45 Texas, 548; Obert v. Landa, 59 Texas, 475; Landa v. Obert, 1 Texas Ct. Rep., 350.

In the original petition Obert sought to recover for the money paid and upon the notes and account surrendered in the settlement made on the 12th day of September, 1870, and also damage for slander and for malicious prosecution.

Preceding the trial from which this appeal was taken, by an amendment of his pleading the plaintiff abandoned all allegations with regard to damage for slander and malicious prosecution.

His petition, as finally amended, among others, contains the following allegations:

"Further complaining, plaintiff charges that on or about the month of April, 1870, one William Greifenstein, having become offended at plaintiff for reproving him for neglect of duty while working in defendant's mill as plaintiff's assistant miller, and fraudulently conspiring to have plaintiff discharged as defendant's miller and have himself appointed as defendant's chief miller at higher wages than he was then receiving, secretly and falsely reported to defendant that plaintiff was embezzling a large portion of the proceeds of defendant's mill, which report defendant well knew or from plaintiff's long and faithful services in his behalf had every reason to believe to be false, and by the exercise of reasonable care and fair dealing might have learned the same to be utterly false; whereupon said defendant, corruptly designing to force plaintiff through fear and intimidation to surrender and relinquish to defendant the aforesaid promissory notes and account for work and labor without just cause or any consideration, and to extort from plaintiff a large sum of money, ample to pay liberal fees to employ attorneys whose services defendant might procure to accomplish his said scheme of corruption, fraudulently concerted with said William Greifenstein and one Samuel Grauke, both strangers and without any character or standing in this country, to act as false spies on plaintiff and make false statements greatly exaggerating the weekly proceeds of defendant's grist mill then in charge of said plaintiff.

"Accordingly said Greifenstein and Grauke did act as such false spies, unknown to plaintiff, from about the month of April, 1870, to about the 12th of September, 1870, during which period said false spies pretended to report weekly to defendant a gross amount as taken in by plaintiff at defendant's mill, in no instance specifying any particular sum or sums as taken at any particular time or day and from whom received, thereby fraudulently intending to prevent the discovery of the falsity of their statements, which defendant made no effort to do, when by the exercise of proper care defendant could have discovered and exposed the falsity of such statements.

"Plaintiff further charges that on the evening of September 12, 1870,

said defendant, in furtherance of and to fully accomplish his said designs of fraud and extortion, induced his attorneys whom he had employed to aid him in that behalf, who were learned in the law, of high standing, and distinguished for their great ability and influence in said Comal County, but with whom plaintiff had no personal knowledge or acquaintance by sight or otherwise, to call on plaintiff while he was alone and busily engaged in running defendant's grist mill in New Braunfels, in said Comal County, charge him with the embezzlement of a large amount of the proceeds of defendant's said mill, and demand of plaintiff an immediate settlement, which said attorneys, to the utter astonishment and great surprise of plaintiff, did do, and then and there further stated to plaintiff, in substance, that the defendant Landa had the evidence of plaintiff's guilt in the statements before referred to of the said Greifenstein and Grauke, who had been acting as spies upon plaintiff, which was the first knowledge or intimation plaintiff had of the same; that plaintiff was guilty of a penitentiary offense; that they would give him one hour within which to fix up the matter, and if not done that evening plaintiff would be prosecuted for embezzlement, and the penitentiary would be certain for him, or he could not escape the penitentiary.

"Plaintiff then and there protested his innocence of said charge of embezzlement, and earnestly appealed to said attorneys to examine his, said plaintiff's, books showing the business of said mill, and by which he could establish his entire innocence of said charge, but said attorneys then and there positively refused to examine or look at plaintiff's said books or make any investigation as to the truthfulness or falsity of the statements of the said spies aforesaid.

"Thereupon plaintiff requested of defendant's said attorneys time to consult an attorney at law for advice before taking any action in the matter, referring particularly to Hermann Seele, Esq., the only attorney at law with whom plaintiff was acquainted and could take counsel in his own (the German) language (but who was temporarily absent from his home in New Braunfels, expecting to and did return on the day following), as plaintiff was wholly ignorant of the law and his rights, not on equal terms with defendant, wholly unable to protect himself, and so much overcome by fear of false witnesess and unlawful imprisonment that he could not act freely or understandingly; which request said attorneys unqualifiedly refused, saying to plaintiff if any settlement was made it must be done at once—an immediate settlement as might be dictated by defendant—or criminal prosecution and unlawful imprisonment in the penitentiary upon the false and groundless charge aforesaid was the only alternative offered to plaintiff.

"About this time the defendant appeared upon the scene of action at his said mill, when plaintiff at once protested his innocence of the said charge of embezzlement, and asked defendant to examine plaintiff's books

of the business of said mill, by which plaintiff could convince defendant of his, plaintiff's, innocence, which defendant continuously refused. At the same time, with the intent to overawe, intimidate, and force plaintiff against his own free will to yield to defendant's demand of fraud and extortion aforesaid, said defendant exultingly and defiantly brandished some papers he held grasped in his hand, and insolently and loudly proclaimed to plaintiff, in substance: 'You have been stealing from the proceeds of my mill for years; I suspected you long ago, now I have caught you; I have had the other millers acting as spies on you, and here I have the evidence of your guilt. Unless you settle at once you will be sent to the penitentiary, and there will be no help for you.' To which plaintiff responded, 'You do me very wrong, Mr. Landa; I am innocent, and you will find it out.'

"Defendant's attorneys then consented that before taking any definite action against plaintiff they would wait a few minutes for plaintiff to consult with his friend old 'Squire Julius Harmes, a merchant in said New Braunfels, but not learned in the law, which plaintiff did at once, and sought to obtain said Harmes' advice as to what he, said plaintiff, should do. But said Harmes declined to advise plaintiff, stating that he was not competent to give any advice in the matter; that plaintiff needed the advice of a lawyer; that they should give plaintiff time to get such advice. The request for time to consult an attorney on behalf of plaintiff was again refused by defendant and his attorneys, and plaintiff given but one half hour in which to settle or be subjected to unlawful imprisonment, which defendant and his attorneys then and there threatened plaintiff with. Defendant and his attorneys having refused to give plaintiff any opportunity to obtain legal advice, or to examine his accounts, or to listen to any explanation he might make, 'Squire Harmes wrote out a statement both in German and in English to the effect that if plaintiff's innocence of said charge of embezzlement was found out or established any settlement plaintiff might make should be set aside, and the defendant Landa should pay plaintiff all he owed him, with 10 per cent interest, which document said Harmes suggested plaintiff should request said defendant Landa to sign in case a settlement was made.

"The plaintiff, thus situated, being unable to read or write the English language or to speak or understand but a few English words, and that, too, very imperfectly, never having studied or learned said language and having associated during his whole life (then being 53 years of age) almost exclusively with a German speaking people, wholly ignorant of the civil and criminal laws of this country, having had no experience in lawsuits or proceedings in court, but a great aversion to them, having always led a quiet and secluded life, confined by habits of industry and economy to uniform and daily labor in a subordinate capacity, without any opportunity of obtaining competent advice or counsel, which had been denied by

defendant; that said defendant was a notorious litigant, with great experience in lawsuits and large means at his command, cunning, unscrupulous, and unsparing in his efforts to accomplish his designs, aided by his said attorneys, two of the ablest lawyers in the country; and plaintiff, thus put about and circumvented with false spies, false witnesses, and false statements aforesaid, with no living witness, an examination of his books of accounts denied, and a refusal to listen to any statement plaintiff might make by which his innocence could be established, found himself alone, in great distress, without friend or adviser, the few minutes given him to determine his course of action expired, confronted by the defendant and his able counsel then and there falsely charging plaintiff with the embezzlement of $18,000, not less than $6000, yet hypocritically proposing as an act of pretended kindness to save him from the penitentiary, which, they asserted, would be inevitable unless defendant's proposition of settlement was accepted at once, that plaintiff should surrender his said notes and account and pay to defendant $1185 in gold, otherwise plaintiff would be prosecuted and imprisoned at once on said unlawful charge of embezzlement, the defendant then and there falsely claiming that his indebtedness to plaintiff, including said $1185, only amounted to $3000, when defendant well knew that he was then justly indebted to plaintiff on said notes and account alone in principal $3990.75, besides interest, aggregating over $4600.

"By reason of all which said acts and doings on the part of said defendant and his counsel, plaintiff charges that he was then and there unduly influenced, overcome with great fear and distress of mind, rendered incapable of acting freely, voluntarily, or understandingly, and unable to protect himself; firmly impressed with the belief that he had been wickedly entrapped by and was at the mercy and helpless in the hands of the defendant and could not escape his well laid scheme of fraud and extortion aforesaid, and that he was the victim of the grasping greed and corrupt machinations of the defendant and his said false spies, and could only save himself from unlawful imprisonment, extreme poverty, and utter financial ruin by accepting defendant's said proposition, which plaintiff then and there by reason of the promises aforesaid was unwillingly forced to do, upon the condition and the defendant first promising, however, that he would sign and give to plaintiff the writing aforesaid, drawn by 'Squire Harmes.

"Whereupon, under the circumstances and the state of facts aforesaid, during the evening of said September 12, 1870, plaintiff surrendered his said notes and account and paid said $1185 in gold to said defendant.

"But after the surrender of said notes and account and the payment of said gold, said defendant willfully and corruptly and in violation of the express terms of said settlement, refused to sign said instrument drawn

by said Harmes or return the same to plaintiff, and would only sign a writing in English, of which the following is a copy, to-wit:

"'Mr. Jacob Obert and myself have this day had a settlement which I believe entirely correct, but at the request of Mr. Obert I hereby state that if at any time I shall become convinced that I have not settled correctly I will correct the error.

"'September 12, 1870.

"'J. LANDA.'

"Said defendant then and there falsely representing to plaintiff that said writing so signed by him, which plaintiff could not read and did not know the contents of, was the same or like the writing drawn by Harmes, when in truth and in fact, as defendant well knew, it was not the same or of like purport; and plaintiff charges that defendant's refusal to sign said writing drawn by said Harmes was in violation of the terms of said settlement, a fraud upon plaintiff's rights, and rendered said pretended settlement null and void. Plaintiff further charges that before the District Court of said Comal County held in New Braunfels, at the fall term thereof in the year 1870, he was duly indicted and tried upon said charge of embezzlement preferred by said defendant, when and where plaintiff was duly acquitted and found innocent of said charge, as will appear by a certified copy of said indictment and the decree of said court hereto attached, marked exhibit B and exhibit C, as a part of this petition. By said trial and judgment of acquittal plaintiff alleges that his innocence of said charge of embezzlement was found out and established; that thereby said settlement, according to the terms thereof and so set forth in said writing drawn by said Harmes, was of no further force or effect, and said defendant was bound to pay to plaintiff the full amount of said notes and account, together with said $1185 in gold, besides interest; and that according to the terms and meaning of said writing defendant was convinced that he had not settled correctly and said settlement was a nullity and should be set aside."

The petition denies that plaintiff did ever in fact embezzle or unlawfully withhold any property or money belonging to defendant.

The defendant pleaded a general demurrer, and a number of special exceptions to the petition. The general demurrer was properly overruled.

The allegations with regard to duress and the right of the plaintiff to have the settlement vacated and to recover upon the notes and open account surrendered, to which exceptions numbered 2, 3, and 4 relate, were we think sufficient, and said exceptions were properly overruled.

Exceptions Nos. 5 and 7 relate to the statute of limitations in two aspects. One is that more than two years had elapsed between the accrual of the respective causes of action and the institution of the suit. With regard to a portion of the open account this is true. The suspension of the statute of limitations on account of the war ceased on the 2d day of

September, 1866, and the bar of two years as to part of the account was complete before the adoption of the Constitution of 1869, by which the period between the 2d day of March, 1861, and the 30th day of March, 1870, was eliminated from the computation of time.

In the case of Campbell v. Holt, 115 United States, 623, it is said: "It may therefore very well be held that in an action to recover real or personal property, where the question is as to the removal of the bar of the statute of limitations by a legislative act passed after the bar has become perfect, such act deprives the party of his property without due process of law. The reason is, that by the law in existence before the repealing act the property had become the defendant's. Both the legal title and the real ownership had become vested in him, and to give the act the effect of transferring this title to plaintiff would be to deprive him of his property without due process of law. But we are of opinion that to remove the bar which the statute of limitations enables a debtor to interpose to prevent the payment of his debt stands on very different ground."

In the case it was decided that in regard to "debt or assumpsit on contract the remedy alone is gone, and not the obligation."

In the case of Lewis v. Davidson, 51 Texas, 257, the same question being before this court, it was said: "It is the settled law of this court that the statute of limitations so far pertains to the remedy as not to confer such vested right as would prohibit by the organic law an extension of the time in which suit may be instituted. Even had the demurrer been well taken at the time, under this subsequent law pertaining to the remedy in force at the trial it ceased to be available."

With regard to real estate a different rule has been recognized by this court. The suspension in this case having been made by the constitutional convention, the decision in the case of Mellinger v. The City of Houston, 68 Texas, 38, with regard to an act of the Legislature has no application. Grigsby v. Peak, 57 Texas, 145; Peak v. Swindle, 68 Texas, 242.

The other exception with regard to limitation is predicated upon the proposition that by amendment pleaded more than ten years after such cause of action accrued plaintiff sued upon the receipt charged to have been written by Harmes and upon Landa's promise to perform the same. We think that the cause of action remained after this amendment as it existed originally, and that it is still a suit for the recovery of the notes and account and money surrendered to Landa, and that there was no error in overruling the exceptions.

The sixth exception reads as follows: "The allegation alleging that Greifenstein conspired with himself to get plaintiff's place in the mill is not pertinent to the cause, as he, Greifenstein, is not a party to this suit, nor do the allegations connect defendant Landa with the private conspiracy of Greifenstein. The allegations setting forth the finding of an indictment against plaintiff and the subsequent judgment of acquittal, set forth

in exhibits B and C of plaintiff's said amended petition, are wholly unconnected with this cause, which is based on what had happended previous to and at the time of settlement. The indictment, trial, and acquittal of plaintiff, all of which happened long after, were public acts not alleged to have been done by the direction of the defendant nor with his consent or approval."

We think that this exception should have been sustained.

The eighth exception, by which it is contended that it was necessary for plaintiff to make a demand before bringing suit, was properly overruled.

The ninth and only remaining exception points out no defect in the pleading.

It will be seen that plaintiff charged that the settlement was made in consideration of defendant's promise to execute the agreement drawn up by Harmes to the effect that if plaintiff's innocence was "found out or established" the settlement should be set aside, and that in violation of said promise, made before the surrender of the notes and money, the defendant, after such surrender, would only sign the instrument set out above, promising to correct said settlement in case "at any time I (Landa) shall become convinced that I have not settled correctly."

In connection with this branch of the cause appellant assigns the following error: "The court further erred in its ruling on the evidence as follows, to-wit: That at the instance of plaintiff, with a view to prove plaintiff's innocence, the court, over the objections of the defendant, permitted plaintiff to read in evidence the indictment that had been found against Jacob Obert, the plaintiff, by the grand jury of Comal County in 1870, and further the judgment of the District Court of Comal County by which the plaintiff, Jacob Obert, was acquitted of the charge of embezzlement which had been preferred against him in said indictment; the defendant's objection to the admissibility of said indictment and acquittal being that it was irrelevant, *res inter alias acta*, not competent proof to establish plaintiff's innocence, and not admissible under the allegations of plaintiff's petition; and because plaintiff had failed to prove that upon his acquittal his money and property were to be returned to him; that in fact no condition whatever had been proved under plaintiff's count of conditional settlement upon the happening of which the defendant was to make restitution."

We are unable to take any view of the cause justifying the admission of this evidence.

If it be conceded that the instrument that plaintiff charged to have been written by Harmes was substantially different from the one that was signed by Landa, and that under the former one Obert was entitled to a recovery when his innocence was "found out or established," still, as the agreement did not include that method of ascertaining the fact, the result of the criminal prosecution could not properly be admitted for the purpose.

Landa was not a party to that proceeding. The mode of trial and rules of decision are different in criminal and civil proceedings.

With regard to this aspect of the case we do not think that the rights of the defendant should have been held concluded or even affected by the result of the criminal prosecution.

We do not find in the record any evidence proper to be considered tending to establish a promise by Landa to execute an instrument different from the one actually signed by him. We think that instrument, in so far as it may have any influence upon the decision of this cause, should be construed in the light of the circumstances surrounding the parties at the date of its execution and so as to give it some substantial effect with regard to the interests of each of the parties to it, rather than allow it a strictly literal effect and thus limit its obligations so as to put it within the uncontrolled option of one of the parties.

Landa was affirming that Obert was indebted to him because he had embezzled his money. Obert was denying the charge. If Obert paid or surrendered anything it was done on the assumption of his guilt. Except upon that assumption Landa had no right to demand of him his money or his property, and it was not pretended that Landa had any right to take or hold the money or notes if Obert was not guilty. Obert was not willing to surrender his property without the establishment of his guilt. The parties could not agree upon a solution of the controversy and Landa declined to delay its discussion or settlement.

The result was that whether or not Landa was rightfully entitled to receive the property it was surrendered to him, and he agreed that if at any time he should become convinced that he had not settled correctly he would correct the error.

It is fair to conclude that he did not intend by the means used to take from Obert his property and keep it if he was innocent, but rather that when convinced that Obert had not committed the wrong he would restore the property, and that he would be so convinced when it should be established in a proper proceeding to which he was made a party. No court of justice can tolerate the proposition that if Obert was innocent of embezzling his money Landa could take and hold his property upon the assertion of his guilt and only give him in return for it his promise to restore it when convinced of the fact of his innocence, and still to hold the property by refusing to be convinced. He was entitled to have the issue tried in a court of civil jurisdiction to which he was a party, and if in that suit it should be established that Obert was innocent, the law should hold him convinced in the true sense of his own promise, and compel him to restore the property.

The issue is properly joined in this suit, where both parties can be heard. If Obert was guilty of embezzlement as charged it may be proved. If the evidence fails to satisfy the court and jury of his guilt it can not

be maintained that Landa should be allowed to retain his property which he originally had no right to take except upon the theory of Obert's guilt.

If for no other purpose, the paper signed by Landa was admissible to show that Obert had not surrendered his property willingly or absolutely, and that there was to be a further and future consideration of the business upon the question of right before his property should be treated as finally lost to him.

Obert testified in his own behalf with regard to the contents of the paper written by Harmes, and which was subsequently lost without being signed. Upon cross-examination it was developed that he had no personal knowledge on the subject, and that his information about the contents of the paper was hearsay derived from Harmes. The defendant moved to exclude the testimony as soon as its character was developed, because it was hearsay. The motion ought to have been granted.

The defendant offered to prove that he had taken no part in the prosecution of Obert on the criminal trial. As the issue of malicious prosecution was out of the case, the evidence was properly excluded.

As affecting the charge of embezzlement, much evidence was introduced with regard to the capacity of the mill, and as to its earnings at dates prior and subsequent to the 12th day of September, 1870.

Landa's charge against Obert was that he had been perpetrating the wrong for years, but he only claimed that he had specific evidence of misappropriations during the period that he had set a watch upon him—"from about the month of April, 1870, to about the 12th day of September, 1870."

It is complained that the court erred in permitting a witness to testify from defendant's books, in behalf of plaintiff, "that the receipts from defendant's mill from January, 1861, to November, 1862, were less than they were about the time plaintiff Obert was in the mill—say from April to September, 1870"—because the time was too remote. While the record does not show the admission of evidence coming precisely within the terms of the objection, we think such evidence should have been excluded. Evidence having a tendency to show what the receipts of the mill were during the period when a watch was kept with regard to them should be admitted. The facts existing near that time, whether before of after, may cast light upon the issue. But there must be some limit of time with regard to such evidence, and we think the years 1861 and 1862 were entirely too remote.

When the cause was first before this court it was said upon the question of duress: "Duress which avoids a contract is either by unlawful restraint or imprisonment; or, if lawful, it must be accompanied by circumstances of unnecessary pain, privation, or danger; or when the arrest, though made under legal authority, is for an unlawful purpose or from

threats calculated to excite fear of some grievous injury to one's person or property.

"Contracts could only be avoided for duress *per minas,* according to the earlier decisions, for fear of life, of loss of member, of mayhem, or of imprisonment; but it seems to be now admitted that contracts may be avoided when induced on threats of injuries for which full and adequate compensation can not be expected from the law, or when one's necessities are so great as not to admit of his awaiting the ordinary process of the law for his relief.

"Viewing the evidence relied upon to prove duress in the most favorable light possible for appellee, it can amount to no more than threats of a criminal prosecution for embezzlement and of a civil action for the money which appellant claimed had been wrongfully and fraudulently withheld from him by appellee. There can be no pretense that the alleged threats import a purpose to make any unusual, harsh, oppressive, or illegal use of the process, either civil or criminal, with which it is insisted appellee was threatened.

"Now it is well settled that the fear of imprisonment which constitutes duress is fear of illegal imprisonment, or imprisonment under such circumstances as if carried into effect would amount to duress by force. Hence the mere fear of imprisonment from a lawful prosecution can not possibly be regarded as duress." Landa v. Obert, 45 Texas, 547.

The cause having been reversed on the first appeal, on the next trial a demurrer to plaintiff's petition was sustained and his cause dismissed, from which judgment he prosecuted the second appeal taken to this court.

In its opinion reversing the judgment this court then used the following language: "Parsons, however, in his work on Contracts, makes no distinction between compulsion and duress. He says a contract made by a party under compulsion is void. It is not, however, all compulsion which has this effect; it must amount to duress. Imprisonment is duress; but to have this effect it must either be unlawful in itself, or, if lawful, it must be accompanied with such circumstances of unnecessary pain, privation, or danger that the party is induced by them to make the contract." Obert v. Landa, 59 Texas, 475.

In the opinion of this court on the last appeal of the cause the following language is used: "The rule to be deduced from the great weight of authority is that mere threats of a criminal prosecution are not sufficient, but there must be a reasonable ground for creating an apprehension in the mind of a man of ordinary courage and firmness that the threats will be carried into execution, and it must also appear that the threats operated directly upon the mind of the party so as to overcome his will."

Greenleaf defines duress as follows: "By duress, in its more extended sense, is meant that degree of severity, either threatened and impending

or actually inflicted, which is sufficient to overcome the mind and will of persons of ordinary firmness." 2 Greenl. on Ev., sec. 301.

Parsons on Contracts says: "Duress by threats does not exist wherever a party has entered into a contract under the influence of a threat, but only where such a threat excites a fear of some grievous wrong, as of death or great bodily injury or unlawful imprisonment." Vol. 1, 393.

We can see no useful result to be gained by a further discussion of the law of duress generally. It clearly appears, we think, from the former opinions of this court delivered in this case that "fear of illegal imprisonment constitutes duress."

A person may be lawfully imprisoned when he is guilty of the crime of embezzlement; or when, in fact, he is innocent of the charge but there exists reasonable ground to believe him guilty he may be lawfully arrested for the purpose of having an investigation. In both cases, the enforcement of the criminal laws being the object of the prosecutor, the imprisonment would be lawful.

The arrest of an innocent man on the charge of embezzlement for the purpose of collecting a debt from him or for the purpose of extorting money from him that he did not owe would be an unlawful imprisonment.

It may be admitted that it is the right if not the duty of every citizen to cause a criminal prosecution to be instituted against any person who is actually or who he may have reasonable ground to believe to be guilty of having embezzled his money; and also that when an innocent man is threatened with such prosecution it is his duty to maintain his firmness, and instead of yielding and surrendering his property as if he was guilty, to resist, and through the protection furnished him by the law vindicate his innocence. But if under such circumstances he does less and surrenders his property, must the courts be closed to him so that when he sues for it and puts in issue the question of his guilt or innocence he will not be heard nor his property be restored to him upon his showing that he was wrongfully deprived of it? We think not.

A person may be innocent, and yet a wrongful prosecution and false witnesses may not only be productive of great pecuniary loss to but result also in the imprisonment of the threatened party.

Without encouraging the innocent to submit too readily to unfounded accusations, we can still see no reason why one person who has by such means, without other consideration, come wrongfully into the possession of another person's property should be permitted to retain it.

If the wrongful possession is not to be maintained without regard to the merit of the transaction, the injured party must be permitted to sue for its recovery, and the wrong must be redressed if the evidence shows that one was committed.

If Obert was not in fact guilty of embezzling Landa's money, and Landa demanded of him the notes and money now in controversy, and inten-

tionally, by any form of expression, induced him to believe that if he failed to comply with his demands he would be prosecuted and imprisoned on that charge, and if the fears of Obert were aroused to such an extent that he surrendered to Landa said money and notes, when he owed him nothing, to avoid such prosecution, the transaction would be within the meaning of the law and should be set aside.

In such a case we can see no use of discussing or considering what a man of ordinary firmness and intelligence would have done under the same circumstance.

The question to be decided is, was Obert innocent of the charge, and did he on account of fear of imprisonment, produced by the conduct or representations of Landa and his attorneys, surrender his property? We can see no reason for discriminating under such circumstances against a weak or timid man.

Upon another trial of this cause, if the evidence shall show that Landa had employed lawyers to bring a civil suit against Obert for an amount of money which he claimed had been embezzled by him, and that Landa and his attorneys, or both, informed him of the charge against him and of their purpose to institute such civil suit, and also informed him or by any means gave him to understand that he was charged with being guilty of the crime of embezzlement, and either threatened to cause him to be prosecuted for that offense or made known to him that one result of filing such civil suit would be to so direct the attention of others to the matter as to lead to a criminal prosecution and his imprisonment on the charge, and that Obert was not in fact guilty of the charge and was not indebted to Landa, and that he was through such representations or proceedings induced to fear that if he did not accede to the demands then being made upon him he would incur the danger of imprisonment, and if under the influence of the fear so created and otherwise unwillingly he surrendered the money and notes now in controversy to Landa or to his attorneys, he will be entitled to a judgment in his favor setting the transaction aside and for the recovery of the amount of money and notes surrendered with interest, subject to such defenses, and such only, as would have been applicable if said transactions with regard to the settlement had never occurred.

The evidence indicates that Obert's claim by open account against Landa was surrendered without payment at the same interview, but after the transaction with regard to the other matters was complete. If the transaction with regard to the notes and money shall be set aside, the one transaction is so intimately connected with the other that so much of the settlement as related to the open account should be vacated for the same reasons and subject to any defense that Landa may have against it independently of said transactions; and regardless of any statement of the amount due him

made by Obert at that time, he will be entitled to recover a judgment for the principal and interest due upon such account.

We deem it unnecessary to consider the errors assigned upon charges given or refused, as we do not think it likely that the same questions will arise on another trial.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered June 24, 1890.