## CITY OF SAN ANTONIO et al. v. SAWYER.

### No. 12014.

Court of Civil Appeals of Texas. San Antonio.

Jan. 25, 1950.

Rehearing Denied April 12, 1950.

Austin F. Anderson, San Antonio, W. Ray Scruggs, San Antonio, for appellant.

Charles J. Lieck, San Antonio, for appellee.

NORVELL, Justice.

By the following instrument in writing, the appellee, Melvin C. Sawyer, submitted his resignation as a police officer of the City of San Antonio:

"*Notice of Resignation*      July 19, 1948
"Attention Chief Palmer
"I hereby wish to tender my resignation from the San Antonio Police Department, to become effective July 19, 1948.
        "(Signed) M. C. Sawyer
            "Date July 19, 1948.
"Witness:
"C. J. O'Neill
"G. E. Matheny"

This resignation was accepted by the Chief of Police in writing on the day tendered; the Chief's endorsement being as follows:

"Date July 19, 1948
"I have this day accepted the resignation of M. C. Sawyer from the San Antonio Police Department, to be in effect as of July 19, 1948.

"(Signed) Fred Palmer,
"Chief of Police

"In the presence of.
"C. J. O'Neill
"G. E. Matheny"

The trial judge found that Sawyer's letter of resignation was ineffective and had been procured by duress exerted upon him by the Chief of Police. The trial judge concluded as a matter of law that Sawyer was still a member of the San Antonio police force, and judgment was rendered against the Mayor, City Commissioners and Chief of Police, ordering them to reinstate Sawyer to his former position in the police department and on the payroll of the City as of August 12, 1948. A money judgment for the sum of $200 each month as pay due Sawyer was also rendered. It was provided by order in the judgment that the first installment was due September 12, 1948; that Sawyer was entitled to interest on the past due installments, and that the payment of such monthly installments should continue until Sawyer was restored to his former status in the Police Department. The court refused, however, to remove Fred D. Palmer as Chief of Police. The City and its officials have appealed.

We are of the opinion that the judgment appealed from must be reversed and judgment rendered that appellee take nothing, for the reason that it conclusively appears that Sawyer's resignation of July 19, 1948, was and is effective. It appears as a matter of law that said resignation was not procured by coercion or duress exerted by the Chief of Police.

The police and fire departments of the City of San Antonio are subject to Firemen's and Policemen's Civil Service Act of 1947. Acts 1947, 50th Leg. p. 550, ch. 325, Article 1269m, Vernon's Ann.Civ.Stats.

Under this Act the Chief of Police is not authorized to summarily discharge members of the Police Force. He does possess the power to order indefinite or temporary suspensions subject to the right of the suspended officer or employee to appeal to the Civil Service Commission. The Chief of Police is required as the head of the Department to give a written statement of his action in suspending employees under his supervision to the Civil Service Commission. There is nothing in the Act which attempts to prevent an officer or employee of a police or fire department from voluntarily resigning or quitting his job, should he desire to do so.

On the night of July 17, 1948, Sawyer became involved in serious difficulty. He was driving one of the police vehicles used for transporting arrested persons to jail when he was called to the Dixie Bar in the 200 block of Laredo Street, by Dave Cisneros, a fellow officer who had arrested Valentine Lopez, Bonifacio Lopez and Francisco Garcia for being drunk. Sawyer placed the arrested persons in the patrol wagon and brought them to the police station. It is undisputed that an altercation occurred between Sawyer and the arrested persons, and the testimony discloses two varying accounts of what occurred. It is sufficient to say that if the witnesses who testified unfavorably in regard to Sawyer's actions be credited, he showed himself to be temperamentally unsuited for the performance of the duties of a police officer. He was accused of having pistol-whipped his prisoners without cause; losing control of his temper, and cursing bystanders around the police station and jail at the time he arrived with his prisoners. It should be said that the trial judge in the main credited the testimony given by Sawyer. The findings of the judge recite that Sawyer "had an altercation with the prisoners in which it was reasonably necessary for him to strike one of them once with his pistol. * * * That the plaintiff (Sawyer) used such reasonable force as was necessary in carrying out his duties in getting the prisoners out of the vehicle and into the Police Station for booking. * * * That in the course of the altercation, the plaintiff

became excited and cursed the prisoners and that a female bystander cursed and abused the plaintiff and that he, in turn, answered such abuse by possibly cursing also. * * * That the cursing that he did was aggravated by the prisoners and by-standers."

Sawyer admitted that as a result of his behavior and loud talking his superior officer, Captain L. G. Dunaway, asked him for his badge and gun and sent him home.

The trial judge's findings, insofar as supported by evidence, are binding upon us, but the fact remains that an altercation did occur, serious charges of mistreatment of prisoners were made against Sawyer, and it became the undoubted duty of the Chief of Police to investigate the matter.

Upon such investigation the Chief of Police concluded that the best interests of the Police Force demanded that Sawyer be separated therefrom. Chief Palmer talked with Sawyer on the morning of July 19th and again that afternoon.

Palmer's version of these conversations and the resignation that was submitted as a result thereof differs from that of Sawyer. According to the Chief, Sawyer was informed that charges would be filed with the Civil Service Commission as a result of his actions on the night of July 17th, whereupon Sawyer requested that he be allowed to resign so as to save the City further embarrassment over the matter and to enable him to obtain other employment without the prejudice of a suspension or discharge appearing in his record as a San Antonio police officer. Sawyer's version of the conversation with the Chief was in the main accepted by the trial judge. The testimony relied upon to show coercion or duress on the part of Palmer comes from Sawyer himself, and is not corroborated by any other witness. The matter is consequently narrowed down to the question of whether or not Sawyer's testimony shows duress or coercion.

Sawyer testified that when he went back to the Chief's office on the afternoon of July 19th, Palmer told him that he could either resign or be dismissed, "there was nothing said about indefinite suspension or anything like that. He said it was to keep a suit from the City." The Chief had a form of resignation made out. Sawyer stated that he would rather resign than be dismissed and nothing was said about the Civil Service Board; that he, Sawyer, thought charges might be filed against him for assaulting prisoners, through the district attorney's office. It does not appear that Palmer told him criminal charges of this nature would be filed. Palmer did not tell Sawyer that he was going to file charges with the Civil Service Board, nor tell him that he (Sawyer) had ten days to go before the Board. He knew that if he were suspended, charges would have to be filed before the Civil Service Commission. He understood parts of the civil service law. His rights under the civil service law were not explained to him when he resigned. He said his understanding was that if he was fired, he would not have a civil service hearing. He knew that if a man were suspended, he should have a civil service hearing. He said he would resign rather than have a suit against the City. Something was said about a criminal suit being filed against the City because of the beating of a prisoner. He resigned to keep the City from suit as he figured the Police Department had enough bad publicity.

It is apparent from the evidence that Chief of Police Palmer had nothing whatsoever to do with the unfortunate circumstances which took place on the night of July 17th. Sawyer's own testimony shows that he did not use the best of judgment in handling the situation. His conduct was such that he sought to excuse it by saying that he had been considerably aggravated and that his prisoners had become unruly. It is not shown that Chief Palmer had anything personally to gain by Sawyer's removal from the police force. And as Palmer had the undoubted right to prefer charges against Sawyer, the claim of duress comes down to Palmer's threat to dismiss Sawyer. In other words, had Palmer said, "If you do not resign, I will suspend you and prefer charges against you," there would be no duress, but it is contended that he said, "If you do not resign, I

will dismiss you," and therefore Sawyer was placed under duress.

No case has been cited and we have found none that says a holding of duress may be predicated upon such evidence as that given by Sawyer from the witness stand. Although during the conversation between Palmer and Sawyer something was said about a criminal case resulting, it does not appear that Palmer threatened Sawyer with criminal prosecution. In his brief, appellee refers to "veiled threats" of criminal prosecution. It is only necessary to read the testimony of the witness Valentine Lopez, Bonifacio Lopez and Francisco Garcia, contained in the statement of facts, to realize that Sawyer, however innocent he might be, was confronted with something more than "veiled threats." He stood in imminent danger of criminal prosecution. And a discussion of this factual situation, which the Chief of Police had neither brought about nor contributed to, did not constitute duress.

In Houston Ice & Brewing Co. v. Harlan, Tex.Com.App., 228 S.W. 1090, 1093, the following was quoted with approval from Black on Rescission and Cancellation: " 'One may yield to the pressure of circumstances, or take some course which is repugnant to him, in order to extricate himself from a predicament; but this does not constitute duress if no constraint is exerted by the person benefitting by the action.' Black on Resc. & Can., vol. 1, p. 585."

In Cameron County Water Improvement District No. 1 v. Handley, Tex.Civ.App., 275 S.W. 298, this Court quoted the following definition from Greenleaf with approval: "By duress, in its more extended sense, is meant that degree of severity, either threatened and impending or actually inflicted, which is sufficient to overcome the mind and will of persons of ordinary firmness."

See also, Lander v. Obert, 45 Tex. 539, 547; Obert v. Landa, 59 Tex. 475; Landa v. Obert, 78 Tex. 33, 14 S.W. 297; Ward v. Scarborough, Tex.Com.App., 236 S.W. 434; Trigg v. Shelton, Tex.Com.App., 249 S.W. 209; Robertson v. Lee, Tex.Com. App., 249 S.W. 217; Dale v. Simon, Tex. Com.App., 267 S.W. 467.

Appellee also argues that his resignation was not submitted and accepted by a proper authority until after he had withdrawn the same. He testified that the day after he submitted his resignation, he told the Chief of Police he had changed his mind and then, on August 4, 1948, after going to Corpus Christi and failing to obtain employment, he wrote to the Civil Service Commission as follows: "I wish to withdraw my resignation from the San Antonio Police Department due to the fact that I did it without forethought. I resigned because I feared that the Police Department might receive bad publicity because of my behavior on the night of July 17, 1948."

As a result of this letter, the Civil Service Commission ordered Sawyer reinstated. Thereafter, the Mayor and City Commissioners of San Antonio, the chief governmental body of the City under its charter, by formal resolution, ratified and confirmed Palmer's action in accepting Sawyer's resignation and ordered him dropped from the payroll.

Under Article 1269m, § 10, the appointing power for police officers is vested in the chief executive of a city, in this case the Mayor. His appointments must be made from an eligibility list prepared by the Civil Service Commission.

The Chief of Police is the representative of the Mayor and the City Commissioners in operating the police department of the City. He at least purported to act in such capacity in accepting Sawyer's resignation, and his actions were ratified by the Mayor and City Commissioners. Further, if Sawyer submitted a voluntary resignation, and we have held that he did, such resignation was submitted by him to the Chief of Police. If that be irregular, he would not be entitled to draw pay as a police officer of the City, from and after the submission and purported acceptance of the resignation, without performing services therefor. Whatever his remedy might be, it is not a suit against the City of San Antonio for salary alleged to have accrued after his attempted resignation and

consequent actual separation from the Police Force.

The judgment appealed from is reversed and judgment here rendered that appellee take nothing.

Reversed and rendered.

### On Motion for Rehearing.

In his motion for rehearing appellee emphasizes his contention that Sawyer's resignation was ineffective because it was not accepted by a proper authority prior to the time it was withdrawn by him. Upon this point, we are in accord with the decision of the Supreme Court of Minnesota in the case of Byrne v. City of St. Paul, 137 Minn. 235, 163 N.W. 162, 163, L.R.A. 1917F, 545, wherein said Court, after holding that there was no evidence of plaintiff's resignation having been procured by coercion or fraud, disposes of the contention that the resignation was ineffective because submitted to the health officer rather than to the commissioner of public safety by saying that: "It is not important that the resignation was not addressed to the commissioner of public safety, the officer having charge of the particular department. It was addressed to the active head of the department, the health officer, was filed with that officer and later accepted, in which the commissioner, if he did not authorize the acceptance, fully acquiesced. It was effectual as a voluntary surrender of the position upon acceptance. And since there was no fraud or purpose to set at naught the civil service provisions of the charter, it is conclusive against the present claim of plaintiff."

Although appellee attacks the sufficiency of appellants' points, no contention is made that the case should be remanded on the ground that our fact jurisdiction only was invoked, or for any other reason. Appellee takes the broad position that the original opinion of reversal and rendition should be withdrawn and the judgment of the trial court affirmed. With reference to this matter, appellee states that "there is no mid-ground and the appellee asks for none."

Being of the opinion that the judgment appealed from is erroneous for the reasons set forth in our original opinion, we overrule appellee's motion for rehearing.