## JACOB OBERT v. JOSEPH LANDA.

SUPREME COURT, AUSTIN TERM, 1883.

*Fraud---Threats---Duress, Etc.*

Appeal from Guadalupe County.

On January 9, 1871, plaintiff filed his petition in the district court of Comal County, charging in substance that the defendant, with

intent to defraud and extort money out of plaintiff, and force him to surrender certain notes and accounts amounting to $5,341.25, slandered him by publicly, etc., accusing him of the crime of embezzlement; that by such slander, the threat and fear of certain false witnesses, the threat and fear of false imprisonment, and other false and fraudulent combinations, acts and doings of defendant, in said petition set forth, plaintiff being put under great fear and excitement and duress, most unwillingly, without freedom and under protest, and being ignorant as to his rights or the effect of his acts, was forced or induced to pay defendant $1,185 in gold, surrender two notes amounting to $1,815, and relinquish an account for work and labor of $2,341.25.

In the same original petition plaintiff charges defendant with false imprisonment, by causing him to be maliciously prosecuted for the same pretended crime, embezzlement, with which defendant had slandered him, further intending to injure plaintiff with the intent aforesaid, and prayed judgment for $20,000 damages, besides said sum of $5,341.25.

January 20, 1371, defendant, in the Comal district court, filed a general demurrer and a general denial to plaintiff's petition.

January 20, 1871, leave was granted for plaintiff to file an amended petition.

January 21, 1871, on motion of defendant, the venue was changed to Guadalupe county.

August 8, 1871, plaintiff filed an amended petition more fully and specifically charging the malicious prosecution alleged in his original petition, among other things, that the prosecution was without any probable cause, claiming interest on the money paid, and on the notes and accounts surrendered, setting out a bill of items of the account for work and labor, more particularly describing the notes, with additional allegations as to the slander charged in the original petition.

August 8, 1871, defendant filed a full answer to plaintiff's original amended petitions.

Upon the foregoing pleadings the cause was tried, judgment rendered for plaintiff, which was reversed by the Supreme Court, Austin term, 1876. (45 Texas 539.)

May 21, 1877, plaintiff filed his second amended petition, alleging in substance that the defendant, on or about April, 1870, fraudu-

lently contriving, etc., to extort money from plaintiff, etc., as alleged in his original petition, fraudulently concerted, etc., with the two witnesses named in the original petition, to act as false spies upon, and report false statements as to moneys received by plaintiff; that accordingly said witnesses did so act and report; that by reason thereof, and the matters set forth in said original and first amended petitions, plaintiff believed that a deep and well laid scheme had been planned and carried out to circumvent and defraud him; that said witnesses would swear falsely against him; that he was helpless to defend himself against said conspiracy, etc., and he was, at the time of the pretended settlement, set up in defendant's answer, by the said acts of said defendant, his co-conspirators and counsel, *overcome with fear, great excitement* and 'distress of mind, and thereby rendered incapable of acting freely, voluntarily or understandingly, and while in such a state of mind he was unduly and fraudulently influenced against his consent and in ignorance, etc., to pay said money, and surrender said notes and accounts.

Plaintiff also set up that the said settlement, so brought about by fraud, undue influence, oppression, etc., was not intended, etc., to be a full or final settlement, but only temporary, to be set aside, etc., as soon as his innocence of said charge of embezzlement should be established, which he alleges has been established; that according to the terms of the papers signed by Landa, defendant has become convinced that he had not settled correctly; that such settlement was erroneous, and a fraud upon plaintiff; that while in said settlement Landa only claiming $3,000, yet, taking advantage of plaintiff's distress and helpless condition, he took from him $5,341, and plaintiff prays to have said pretended settlement set aside, and for judgment as originally prayed for.

November 6, 1877, defendant filed what he calls an amendment and *replication* to plaintiff's last amendment, and sets up the plea of *res adjudicata.*

November 7, 1877, plaintiff filed his third amended petition, alleging in substance that he made said pretended settlement on the conditions agreed to by defendant that said defendant would give plaintiff a writing, to the effect that if plaintiff's innocence of said charge of embezzlement was established, said settlement should be set aside, and plaintiff's money, notes and accounts paid and surrendered on said settlement, should be returned by defendant, which

writing defendant fraudulently, etc., refused to execute, after he had obtained said money, etc.; that plaintiff being overcome and helpless, etc., was forced to take such paper as defendant saw fit to give him; that plaintiff's innocence of said crime has been established; that the said settlement was conditional, and should be set aside, etc.

November 8, 1877, defendant files the exceptions to plaintiff's original and several amended petitions, which were sustained by the court, and judgment rendered against plaintiff, to which plaintiff filed his bill of exceptions, and from which judgment plaintiff appeals.

Opinion by Delaney, J.

Great latitude of discretion is necessarily allowed to the district judge in directing the conduct of a cause. If, therefore, he permits one of the parties to withdraw his announcement of readiness for trial and to file additional pleadings, this court will hesitate to revise his action unless there is a manifest abuse of his discretion. (Whitehead v. Foley, 28 T. 1.) And in this case if the defendant's exceptions were well taken we should say that the judgment ought to be affirmed, notwithstanding the seeming irregularity.

The exceptions, taken as a whole, amount to a general demurrer, and perhaps something mo e. Their collective meaning is that the original and amended petitions do not set forth a good cause of action. This fact may be brought to the knowledge of the court at any stage of the trial; even after verdict it may be done by motion in arrest of judgment, but we do not think that the exceptions are well taken.

The first objects to that part of the pleadings which alleges slander as a cause of action. This is a sort of general demurrer to a part of the plaintiff's case, and it should have been overruled, for if he can establish his allegations under this head, we see no reason why he may not recover.

The second exception is taken to that part of the case which set up as a cause of action the malicious prosecution "because the same as plead does not allege the want of probable cause." In this the defendant is mistaken; the want of probable cause is fully set forth by the plaintiff.

The third exception objects to that part of plaintiff's pleadings

which relies upon duress, because the plaintiff does not allege that violence was offered to his person or that there was any threat of illegal imprisonment. "If," says Blackstone, "a man through fear of death, or mayhem is prevailed upon to execute a bond or do any other legal act, these * * * may afterwards be avoided if forced upon him by a well grounded apprehension of losing his life or even his limbs, in case of his noncompliance;" and after stating that this fear must be upon sufficient reason he quotes a passage from Bracton, which I will venture to translate, as follows: "It must not be the apprehension of some light and timid person; but such a fear as might alarm a resolute and determined man, for this fear must comprehend within itself peril of life or the danger of bodily torture." (1 Com. 130.) Thus stood the law of England for many centuries, but in process of time the courts have done much to mitigate its harshness.

Their decisions, however, made as occasion required, have hardly proceeded upon any definite rule except that of revolt against a barbarism of the law, it is therefore difficult to harmonize them upon any consistent principle.

In the case of duress of goods, some of the courts have resorted to the expedient of holding that when a man's property is wrongfully detained, and he pays money simply to obtain possession, and not by way of adjusting the matter, he may recover it back.

In England this is put upon the ground that the money was not paid voluntarily, but under compulsion, and not on the ground that it was paid under duress, as technically understood. In such cases the question is whether the payment was voluntary or involuntary. (Metcalf on Con., pp. 25, 26.) Parsons, however, in his book on contracts, makes no distinction between compulsion and duress. He says, "a contract made by a party under compulsion is void. It is not, however, all compulsion which has this effect, it must amount to duress, * * * imprisonment is duress, * * * but to have this effect, it must either be unlawful in itself, or if lawful, it must be accompanied with such circumstances of unnecessary pain, privation or danger, that the party is induced by them to make the contract."

To understand what is here said about a lawful imprisonment being accompanied by circumstances of pain, privation, etc., it must be remembered that in England and in most of the American States, until a comparatively recent period, imprisonment for debt was lawful. In actions of debt, *assumpsit*, etc., upon claims for money, the

defendant, instead of being cited to appear and answer, as is the case in this, was often arrested and might be lodged in jail.

In this state of the law, if a party, thus under arrest in an action of debt, entered into any adjustment of the matter with his adversary, he could not afterwards avoid it under the plea of duress, for his imprisonment was lawful. In such cases the creditor paid the costs of the imprisonment, and could control the action of the officer, very much as the plaintiff in execution can now control the action of the sheriff in the levy and sale of property. And he was often tempted by collusion with sheriffs, jailors and other officers to add to the harshness of the prisoner's confinement in order to hasten a settlement of the debt. These are the circumstances of unnecessary pain, privation, etc., which are generally alluded to in the books and unless we attend to this fact, we may be misled by such general expressions as those quoted above.

We have in this State nothing like imprisonment for debt, or arrest upon civil process. To threaten with such imprisonment a citizen who had been long in the State and was familiar with its laws upon the subject, might be entirely harmless, because it would not probably alarm him; but to induce a foreigner who had just come into the country, to believe that such an arrest might be made and to threaten him with it in order to extort money from him, might be a very different thing. And to threaten to accuse a citizen of a felony in order to extort money from him is a grave offense against the criminal law. Penal Code, Art. 648; Paschal, Art. 2307.

In this case the parties were not dealing at arms' length. The plaintiff is represented as occupying an humble and subordinate position; as having been long in the employ of the defendant and accustomed to look up to him as much his superior. He was almost entirely ignorant of the language of the country; knew nothing of its laws, and was morbidly timid about courts and judicial proceedings. The defendant appears to have been a well informed and determined man; powerful in the neighborhood where they both lived; unscrupulous in forming his plans, and ready and able to carry them out by any means, however questionable.

The defendant knowing that the plaintiff has money and being himself largely indebted to him, knowing also his weakness and how easily he may be terrified by the threat of a criminal prosecution, deliberately determines to fabricate a story of his guilt, and by

playing upon his fears, to extort from him his money and those evidences of debt. He arranges his plans skilfully, employing two eminent lawyers and assuring them of the plaintiff's guilt, they all three come upon him when he is entirely alone; they charge him with having embezzled a large amount of his employer's money; they assure him that the proof of his guilt is clear; that two witnesses who have been upon his track are ready to swear to it in open court; that he must settle in half an hour or he is a doomed man. In vain he protests his innocence and pleads for time to consult counsel, the answer is prompt and decisive: settle at once or take the consequences. As soon as his fears are sufficiently wrought upon, he is told that this settlement shall not be final, but that when he surrenders the money, notes, etc., he shall receive an instrument of writing to the effect that as soon as his innocence is established everything shall be restored, and so he yields to the demand.

Now the defendant, by his exceptions, admits that this whole story of guilt was a fabrication; that the plaintiff owed him nothing, yet he insists that no recovery can be had, because when the plaintiff gave up the money, etc., he was not under duress; there was no threat of illegal imprisonment.

The plaintiff, however, put the case upon the ground of gross fraud, imposition, undue advantage and oppression, which would be fully sufficient to set aside the supposed settlement. (1 Story's Ex. 523.) In such cases the question becomes one of consent, and it is whether the party made the agreement freely and advisedly, or was his consent obtained by the means just mentioned.

In what has been said we have had reference to the case and the parties solely as they are presented in the pleadings and not as they may appear on the trial. As the judgment must be reversed we may remark that on the former appeal, the eminent judge who delivered the opinion appears to have adopted from the books and to have applied to this case expressions which are properly applicable to a different class of cases.

The language is as follows: "There can be no pretense that the alleged threats import a purpose to make any unusual, harsh oppression, or illegal use of the process either civil or criminal with which it is insisted appellant was threatened." These expressions, as has already been shown, have their appropriate application to

cases of imprisonment for debt, and others of a like character, if such there be; though they have been sometimes (and as I think inadvertently) applied to cases of a different character. Upon this branch of the case the court appears to have followed the case of Harmon v. Harmon, 61 Maine 227. In that case, however, the parties were on equal terms; they dealt at arm's length; one knew just as much about the gravity of the threat as the other; besides, the plaintiff admitted that he did not make the settlement from any fear of the threats against himself, though this was ground of his action, but stated that he had made it for another reason, which the court said might have been a good one, only that he had not set it up in his pleadings.

These are the only points which we think need be considered in the case. Our opinion is that the judgment should be reversed and the cause remanded.