### MELLIE PERKINS ET AL. V. W. B. ADAMS & CO.

Delivered November 17, 1897.

**1. Community Property—Presumption.**

It will be presumed in the absence of a showing to the contrary that the real property possessed by a husband and wife at the time of the husband's death was community property.

**2. Contract—Mental Incapacity—Threats to Prosecute.**

A contract which one who was aged and mentally infirm was impelled to make by reason of his fear of the execution of a threat by the other to prosecute and imprison his sons for selling mortgaged property, may be avoided on the ground of fraud.

**3. Evidence—Opinion.**

It is incompetent for a witness to state that a message from him did not contain threats of a criminal prosecution, but he should state the language of the message and leave its import and meaning for the jury.

APPEAL from Medina. Tried below before Hon. JOHN A. GREEN, JR., Special Judge.

*George Powell,* for appellants.—The evidence disclosed the mental weakness of J. M. Perkins and his susceptibility to be influenced by the threats of others, and the fact of his having been unduly influenced by the threats of Ivey Bros. to execute the note and mortgage in question, and the court should have submitted to the jury in its main charge the issue of undue influence and duress exercised over said Perkins by the threats of Ivey Bros. Morrison v. Faulkner, 80 Texas, 131; Gibson v. Fifer, 21 Texas, 264; Kocourek v. Mark, 54 Texas, 205; McGown v. Bush, 17 Texas, 190; Phelps v. Zuschlag, 34 Texas, 379; Brown v. Pridgen, 56 Texas, 127; Walker v. McNeils, Dall., 541.

No brief for appellees reached the Reporter.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by W. B. Adams & Co. against Mellie Perkins, as the wife, and the other appellants as the children and heirs, of J. M. Perkins, deceased, upon a promissory note executed on January 29, 1892, by J. M. Perkins to Ivey Bros. for the sum of $250, payable on or before January 21, 1893, with 10 per cent interest from its date, and to foreclose a mortgage on eighty acres of land, executed by J. M. Perkins and Mellie Perkins at the same time to the payees of the note to secure its payment.

Appellees alleged in their petition that they were the owners and holders of the note and mortgage, and prayed judgment for the debt, interest, and costs as a charge upon the mortgaged premises only, and foreclosure of their mortgage lien.

The appellants answered by general and special exceptions to the petition, and specially admitting the execution of the note and mortgage as alleged, but alleged that there was no consideration for their execution, but averred that at the time they were executed J. M. Perkins was aged

and enfeebled in mind and body and without mental capacity to understand the nature of his act, and that Ivey Bros., the original payees, knowing of his unsound mental condition, wrongfully took advantage of it and induced him to execute the note and mortgage without any consideration therefor.

That Ivey Bros., knowing that J. M. Perkins was aged and enfeebled in mind and body, a short time prior to the execution of the note and mortgage, claimed an indebtedness against said Perkins and his two sons in the amount for which the note was given, and asserted that Perkins' sons had fraudulently disposed of personal property which they had mortgaged to them for the purpose of securing their respective indebtedness, and they, the said Ivey Bros., communicated to J. M. Perkins a threat that they would prosecute his sons criminally and send them to the penitentiary for fraudulently selling mortgaged property, if he did not make them a note and give security for the full amount of his and his sons' indebtedness to them, and that on account of his enfeebled physical and mental condition he was by such threat overcome by fear for his sons, and induced thereby, without consideration, to execute said mortgage. That at the time they were executed, and prior thereto and afterwards until his death, J. M. Perkins was in such a weak and unsound state of mind as to be wholly unable to resist the influence brought upon his mind by the threats of Ivey Bros. against his sons; that substantially the same threats against her sons were made to Mellie Perkins by the original payees in the note, and that through fear of their execution she was caused to sign the mortgage executed by her husband. That J. M. Perkins, deceased, was not indebted to Ivey Bros. in the sum claimed, or in any amount whatever, and that by reason of his mental infirmity and the influence of fear for his sons, occasioned by said threats, under which the note and mortgage were issued, they were without consideration and void.

Upon the trial of the cause, which was before a jury, the appellants, for the purpose of obtaining the right to open and close the argument, admitted that appellees had a good cause of action as set forth in their petition, except in so far as it might be defeated in whole or in part by the facts alleged in their answer constituting a good defense.

The jury returned a verdict in favor of appellees for the amount of principal and interest due on the note, but made no mention in the verdict of the mortgage given to secure it. Upon this verdict, and the admission of appellants, made as aforesaid, the court entered judgment against appellants, to be satisfied out of the mortgaged premises, together with foreclosure of the mortgage lien thereon. From that judgment we have this appeal.

*Opinion.*—There was no error in the court's overruling appellant's special exception to appellee's petition. It did not seek to establish a personal obligation against Mellie Perkins, or against any of the other appellants, but only to fix the amount of the alleged indebtedness as a

charge upon the mortgaged premises, and to have it satisfied therefrom by foreclosure sale. If the property mortgaged was not a part of J. M. Perkins' estate, and not claimed by appellants, they could not be affected in any way by its being subjected to appellee's demand. In the absence of allegations and proof to the contrary, it must be presumed community property of J. M. Perkins and wife, since it was possessed by them at the time their marriage was dissolved by the former's death.

The evidence tends to show that J. M. Perkins and his adult sons, Lee and John, in 1891 and 1892, traded with Ivey Bros., a firm of merchants doing business in Devine, running accounts with said firm; that in January, 1892, J. M. Perkins and his said two sons were indebted in their separate and individual accounts to Ivey Bros. in the aggregate amount of $257, of which $64 was on account of J. M. Perkins, and the balance on account of Lee and John.

That about January 20, 1892, Ed Ivey, a member of the said firm, sent J. M. Perkins a message by J. A. Wright to the effect that John and Lee Perkins were indebted to his firm on accounts, and had given a mortgage on personal property to secure such indebtedness; that subsequently, with the intent to defraud their creditors, they had sold such mortgaged property; that he, J. M. Perkins, was also indebted to them, and that if he did not make Ivey Bros. a note secured by a mortgage on land for the entire sum due by himself and sons, they would prosecute John and Lee for fraudulently selling mortgaged property and send them to the penitentiary.

That J. M. Perkins was then about 76 years old, in feeble health, infirm of body and mind, and on that account easily excited to fear for the safety of his sons by threats of the nature embodied in the message sent him by Ed Ivey; that said message was communicated to him by Wright, and that on account of his infirmities his volition was overcome by it, and, to save his sons from the threatened prosecution, he was induced to execute the note and mortgage sued on. The evidence also tends to show that his wife, Mellie, through fear of such threat and to relieve the anxiety of her husband, joined with him in the execution of the mortgage.

Without expressing or intimating any opinion as to whether the evidence is sufficient to establish such facts, we have stated what it tends to prove, simply for the purpose of enabling us to discuss intelligibly the assignments of error relating to such evidence.

The fact is uncontradicted that the note and mortgage were assigned to the appellees long after maturity. Nor is it controverted that appellants, other than Mellie Perkins, are the children and heirs at law of J. M. Perkins, deceased.

The court instructed the jury that appellants by their answer sought to avoid the note and mortgage on the grounds (1) that there was no consideration for their execution, and (2) that at the time they were executed J. M. Perkins was not of sufficient mental capacity to make a binding contract.

With reference to the first ground of avoidance stated, it charged the

jury, that if they believed from the evidence that J. M. Perkins was not indebted to Ivey Bros. at the time of the execution of the note and mortgage, to find for the appellants, regardless of whether his mind was sound or not at the time the note and mortgage were executed.

Upon the second ground stated, it instructed the jury, that if they believed from the evidence that at the time the note and mortgage were executed J. M. Perkins was of such unsound mind that he was unable to comprehend the nature and purpose of his act, such instruments would be void, and to find for appellants. But that it is not every state of mental imperfection that will avoid a contract, but that the contracting party, at the time the contract was made, must have such disease, weakness, or other imperfection or derangement of the mind as disqualifies it when entering into the form of a contract to comprehend the subject thereof, and its nature and probable consequences. And that if the jury believed from the evidence that J. M. Perkins, at the time of the execution of the note and mortgage, had sufficient mental capacity to comprehend the subject and nature of the probable consequences of his acts, to find for the appellees.

At the request of appellees, it instructed the jury that if Ed Ivey threatened to prosecute John and Lee Perkins for fraudulently disposing of mortgaged personal property, and that such threat operated to incapacitate J. M. Perkins, from fear and excitement thereby induced, to realize the full legal force and effect of his act in executing the instruments, but if at the time J. M. Perkins justly owed Ivey Bros. the sum of $64, the note and mortgage would to that extent be valid.

The appellants requested the court to instruct the jury, in substance, that if John and Lee Perkins were, on January 22, 1892, adults, then J. M. Perkins was not on said date responsible for their indebtedness, and that to become liable for the same he must have voluntarily, while mentally capacitated to do so, agreed in writing to pay such indebtedness; and that if, when he executed the note and mortgage, he did not possess sufficient mental capacity to do so, but was induced thereto by threats of Ivey Bros. to prosecute his sons, while so mentally weak as to be unable to resist the influence of such threats, then to find for the appellants.

The refusal of the court to give this charge, and its omission to submit any charge on the question as to whether J. M. Perkins was by reason of mental infirmity induced by the alleged threatened prosecution of his sons to execute said instrument, are assigned as error.

It has been held in a number of cases in which there was no element of mental infirmity, that a father may avoid a mortgage which he was induced to execute by threats of the prosecution and imprisonment of his son. Harris v. Carmody, 131 Mass., 51; Schoener v. Lissaner, 36 Hun, 102; 107 N. Y., 112. For other cases see note to National Bank v. Kusworm, 26 L. R. A., 48.

In a similar case (Williams v. Boyley, 14 L. T. Rep., 802), it was said by Lord Westbury, that "a contract to give security for the debt of another, which is a contract without consideration, is above all things a

contract which should be based upon the free and voluntary agency of the individual who enters into it. But it is clear that the power of consider-ing whether he ought to do it or not, whether it is prudent to do it or not, is altogether taken away from a father when he is brought into the situation of either refusing and leaving his son in that perilous condition, or of taking on himself the amount of that civil obligation." And he gave it as his opinion that a father appealed to under such circumstances, with a knowledge that unless he does so his son will be exposed to a criminal prosecution, with the certainty of a conviction, can not be regarded as a free and voluntary agent.

The principle underlying this class of cases is, that whenever a party is so situated as to exercise a controlling influence over the will, conduct, and interest of another, contracts thus made will be set aside. Adams v. Bank, 116 N. Y., 606, 15 Am. St. Rep., 447.

The question as to whether a father may ordinarily avoid a contract which he was induced to make by threats of prosecution and imprisonment of his son has never, so far as we are informed, been directly decided in this State. But it has been said by the Supreme Court, in cases where the threat of prosecution and imprisonment was made against the party sought to be held by the contract, that the rule to be deduced from the great weight of authority is, that mere threats of criminal prosecution are not sufficient to avoid a contract, but there must be a reasonable ground for creating an apprehension in the mind of a man of ordinary courage and firmness that the threats will be carried into execution, and it must also appear that the threats operated directly upon the mind of the party so as to overcome his will. Obert v. Landa, 59 Texas, 475. It is not necessary to a disposition of this case for us to decide whether a threat made to the father to prosecute and imprison his son will in any case be sufficient to avoid a contract induced by it.

The question here is, will such a threat made to one who is aged, infirm of body and mind, who by reason of such infirmity was excited to fear, avoid a contract he was impelled to make by reason of his fear of the execution of a threat to prosecute and imprison his sons? It seems to us that in cases of this character, regard should be had to the condition of mind of the person acted on by such threat, and his age, disposition, and intellect taken into consideration. The aged, weak in body and mind, should not be left to the mercy of an unscrupulous man, who operates upon his fear by threats he is not able to withstand by reason of his infirmity, to extort money or a contract without any consideration from him.

In Cribbs v. Sowle, 87 Michigan, 77, 49 Northwestern Reporter, 589, it is stated by the Supreme Court of Michigan: "Truly, to such an action as this the defendant, who, without semblance of any legal or moral right or claim, has scared money out of an old man, can not well set up any defense of the policy of the law that it was the duty of the injured party to have resorted to the courts in the first place, or have withstood the threat of being taken there until proceedings were actually begun, to defend

himself from the extortion. Nor is it * * * the true policy of the law to make an arbitrary and unyielding rule in such cases to apply to all alike, without regard to age, sex, or condition of mind. Weak and cowardly people and old and ignorant persons are the ones that need the protection of the courts, and they are the ones usually operated upon and influenced by threats and menaces." The law must have some regard for the infirmity, the fear, the solicitude of an old man when they are preyed upon by the unscrupulous to extort an unconscionable contract. Who can tell what any man, who has nature in him, will not do to save his sons from a threatened prosecution for a felony, and his name and family from disgrace? And in our opinion, if an old man is too weak by reason of mental infirmity to withstand a threat which involves the imprisonment of his boys and the degradation of his family, the law should assert its strength and save him from the consequences of a contract extorted from him by such a threat. We think, therefore, that the court erred in not submitting in its charge the question as to whether J. M. Perkins was, by reason of mental infirmity, induced by the alleged threatened prosecution of his sons to execute the instruments sued on; and if he was so induced, in failing to instruct the jury as requested by appellants to find a verdict in their favor.

On the trial of the case, appellees' counsel, on his direct examination, asked Ed Ivey: "Did your message to J. M. Perkins, deceased, touching a settlement of your account with him and his sons, involve any threats of a criminal prosecution if said accounts were not settled at once?" This question was objected to upon the ground that it was leading. The objection was overruled, and the witness answered, "No; my message did not contain threats of a criminal prosecution if said accounts were not secured at once by said Perkins." Permitting the witness to answer over the objection, is assigned as error. Ordinarily courts will not review the action of a trial court in permitting leading questions to be asked a witness, since it is a matter addressed to the sound discretion of the court. As the judgment will be reversed on other grounds, it is not necessary for us to say whether the ruling of the court on the question as it is presented by the assignment should be reviewed in this case. But in view of another trial, we will say that the question was improper in that it called for the opinion of the witness as to the import of the message. The witness should have been required to state the language in which the message was expressed, or as nearly its language as he could recollect, and the jury left to determine its import and meaning.

We do not believe the other errors assigned, not involving the questions we have considered, are well taken.

Because of the errors indicated, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*