## SHRIVER v. McCANN.

(Court of Civil Appeals of Texas. Amarillo. March 1, 1913. On Motion for Rehearing, March 22, 1913.)

1. BROKERS (§ 82*)—ACTIONS FOR COMPENSATION—DEFENSES.

In an action to cancel a note and mortgage pursuant to an agreement for their cancellation as compensation for procuring a purchaser for land, where plaintiff pleaded that defendant repudiated the agreement, and that, by reason of the repudiation and of threats by defendant to foreclose the mortgage and criminally prosecute plaintiff, the note and mortgage had been renewed, and was evidenced by and merged in a new note and mortgage, plaintiff was not entitled to the relief asked without pleading and proving facts sufficient to avoid the new note and mortgage.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 101–103; Dec. Dig. § 82.*]

2. APPEAL AND ERROR (§ 719*)—ASSIGNMENTS OF ERROR—NECESSITY.

The court's error in canceling a new note and mortgage, pursuant to an agreement for their cancellation as compensation for plaintiff's services as a broker, although it appeared that they had been merged in a new note and mortgage, and no matters in avoidance of the new instruments were pleaded or submitted to the jury, was fundamental, apparent upon the face of the record, and reviewable without any assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982; 3490; Dec. Dig. § 719.*]

3. CONTRACTS (§ 128*)—LEGALITY OF OBJECT AND CONSIDERATION — COMPOUNDING OFFENSES.

A contract made in consideration of compounding a criminal offense is void because in contravention of public policy as well as Pen. Code 1911, art. 422, providing that one agreeing not to prosecute an offender or inform upon him in consideration of something valuable promised to be paid is himself guilty of an offense, and such a contract, if executory, will not be enforced, or damages allowed for its breach.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 633–653; Dec. Dig. § 128.*]

4. CANCELLATION OF INSTRUMENTS (§ 37*)—PLEADING—MORTGAGES—CONSIDERATION.

In an action to cancel a note and mortgage pursuant to an agreement for their cancellation as compensation for services, a petition alleging that by threats to foreclose the mortgage and to criminally prosecute plaintiff the note and mortgage had been renewed, and was merged in a new note and mortgage, was insufficient to raise the issue of the invalidity of

the new note and mortgage because based on an agreement to compound a criminal offense.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–80; Dec. Dig. § 37;* Contracts, Cent. Dig. § 1196.]

**5. CANCELLATION OF INSTRUMENTS (§ 37*)— MORTGAGES—PLEADING—SUFFICIENCY.**

In an action to cancel a note and mortgage, a petition alleging that, by reason of threats of criminal prosecution, they had been renewed and were merged in a new note and mortgage, was insufficient to raise the issue whether the new note and mortgage were procured under duress of imprisonment, since it did not allege the character of the offense for which the party was threatened with prosecution, nor sufficiently show that he was thereby deprived of freedom of contract.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–80; Dec. Dig. § 37;* Contracts, Cent. Dig. § 1196.]

**6. CONTRACTS (§ 95*)—VALIDITY OF ASSENT —DURESS.**

To render a contract invalid as having been procured under duress of imprisonment, the party's freedom of contract must have been thereby overcome.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 431–440; Dec. Dig. § 95.*]

Appeal from District Court, Randall County; Jno. W. Veale, Special Judge.

Action by William McCann against D. A. Shriver, with which was consolidated an action by Shriver against McCann. From a judgment in favor of McCann, Shriver appeals. Reversed and remanded.

Ben H. Stone, of Amarillo, for appellant. A. S. Rollins, of Amarillo, for appellee.

HENDRICKS, J. This record discloses that McCann had sued the defendant, Shriver, upon an alleged action of agency in selling the latter's land, and in the same court Shriver had sued McCann in another and different suit, upon a promissory note, and for a foreclosure of a chattel mortgage upon personal property securing said note, and the district court, upon motion, consolidated the two cases which action is not questioned here, and the consolidated cause assumed the style and number of the case of McCann v. Shriver in said court, and upon the trial of the consolidated cause to a jury a verdict was rendered in favor of plaintiff, canceling the note and mortgage, or, more properly speaking, canceling a note and mortgage, and the court rendered judgment canceling the particular note and mortgage sued upon by Shriver.

[1] The plaintiff McCann, appellee in this court, after pleading that he had procured a purchaser and had sold defendant's land, and earned a money commission in consequence of his performance of said contract of agency (which is not appropriate here except for the purpose of understanding the pleading upon which he recovered), further alleged the following: "Plaintiff further says that, should the court not be of the opinion that he is entitled to recover the sum of $1,600 under the allegations above set out,

then that he is entitled to recover from defendant by virtue of an agreement made by and between plaintiff just after or at the time of the consummation of the said sale, but which had been by defendant repudiated, which agreement was in substance as follows: That in consideration of the services of the plaintiff rendered in procuring a purchaser for said land the defendant would cancel and deliver to plaintiff fully discharged the certain note of plaintiff for about the sum of $612, dated ————, with ———— interest from date; that said note and mortgage which secured it by reason of the repudiation of the defendant, as aforesaid, and by reason of threats by defendant to foreclose said note and to criminally prosecute plaintiff, have been renewed, and is now evidenced by and merged in a note for the sum of $791.-50, dated 1st day of September, 1910, with 8% interest from date and secured by chattel mortgage of record in Randall county, Tex. Plaintiff says that if he is not entitled to recover under the contract originally made with defendant as set out or if he is not entitled to recover under his plea of quantum meruit, then he is entitled to recover under the above agreement and the amount of his recovery be the amount of the note and mortgage held by defendant against this plaintiff with all interest and costs."

First. We will iterate for the purpose of more clearly understanding the issues involved that it is to be noted that plaintiff alleges an agreement for the cancellation and discharge of a note for about $612, which he owed the defendant, made "just after or at the time of the consummation of said sale," and which agreement "has been by defendant repudiated," and "that said note, and mortgage which secured it, by reason of the repudiation" of the agreement by the defendant as aforesaid, "and by reason of threats by defendant to foreclose said note (meaning the mortgage) and to criminally prosecute plaintiff," said note was merged into another note for a larger sum, secured by chattel mortgage (which is shown by the testimony and pleading of defendant to have been a different mortgage). The new note extended the time of payment for a year.

The evidence of Shriver was to the effect that the real agreement of compensation between plaintiff and defendant was that the note for $612 would be discharged when the first installment of payment was made by the purchaser of the land; McCann contending that, if he sold the land, the note he owed defendant was to be canceled and discharged without any further condition whatever with reference to any payment of any installment by the purchaser of the land, and months afterwards the defendant, Shriver, wrote plaintiff McCann a letter, dated September 7, 1910, which was introduced in evidence by plaintiff, a part of which we quote as fol-

lows: "In regard to the land deal, will say that our trade was never closed. My agreement with you was when the first payment was made, then the trade was closed and not before. It was so agreed to and as yet they have failed to pay me the money I loaned you and interest, for which I have a note and mortgage on your property and you taking the attitude you do in this matter, makes me feel like closing my mortgage. Now, I have been your friend in need and if you are going to take or attempt to take this kind of a turn on me, I will proceed at once to protect myself by placing my note and mortgage in an attorney's hands to collect and you know the result where a man has disposed of mortgaged property. Now, I will make this short, as you have thrown the stone. Give me a new note, mortgage for one year on your implements and stock and if any time I can get my trade through you will get the notes returned to you canceled. I hope this will be satisfactory and you will act accordingly and to your best interest. I am sorry for your condition and I have had no intention of crowding you in the least and you have showed a disposition to not pay, hence something must be done at once. You had best see a lawyer and get some advice as I do not want you to be fooled in this matter in the least but you must act without delay." The note owed by McCann to Shriver was due September 4th, and the latter, after writing the preceding letter, wrote another a few days later, dated September 20, 1910, evidently in reply to one written by McCann about the same matter, a part of which we quote as follows: "Yours just received and noted. Will say time to arrange matters will be all right. The amount you owe on note is $817.20, interest and principal up until September 1st, 1910." (The spelling is entirely ours.)

Before the execution of the new note and mortgage, which latter was upon entirely different property, the matter pending between them was in the condition of affairs indicated above with reference to the contention of the appellant as to the agreement for the cancellation of the old note as compensation for the sale of the land, and as to his demand for the new note and mortgage which was thereafter executed and dated back as of September 1, 1910. The statements made by us with reference to the evidence are for the purpose of understanding the legal issues involved and, of course, are inappropriate for the consideration of the parties at another trial; and in this connection we will say it is rather conclusively shown by the record that the appellee knew that the land deal with the purchaser, Malcolm, had been definitely consummated with the owner of the land at the time he signed the new note and mortgage—really evidenced by the letters of appellant, which appellee himself introduced in the record, notwithstanding a letter of sub-

sequent date, written by McCann to Shriver, susceptible of a construction of a lack of knowledge upon that subject. However unsettled the evidence may be, imputing a knowledge to appellee of this condition he inferentially, if not directly, pleads his knowledge of this condition (which pleading is the measure of his recovery), when he alleges that the agreement for his commission was made just after or at the time of the consummation of the sale to the purchaser, and that on account of the repudiation of the agreement, and threats to foreclose the mortgage, and of a criminal prosecution, he signed said additional paper; hence the question naturally arises from the record: Has he sufficiently alleged or proved sufficient facts of avoidance of his liability upon the new contract, executed by him, with full knowledge of the circumstances? When this litigant pleads the execution of a new instrument in writing, based upon a valuable consideration, with full knowledge of conditions, merging a previous contract of indebtedness, and executed at a time when the payee in the note and the beneficiary in the mortgage is denying the maker's theory of an agreement, which, if true, would destroy the note merged, and contending for a different agreement, which, if true, would not affect the paper, the burden is necessarily upon the maker of the new note and mortgage to present some affirmative theory of law supported by the facts, for the accomplishment of that purpose. In other words, stated in another form, appellee has no right to contend—after the new note was signed, which he himself pleads merged the old note—that the agreement for a surrender of the old note, which he pleads appellant repudiated was still in existence, and was not merged into the new contract without striking down the new contract by some issue in avoidance of same raised according to the principles of law. How can he avoid his liability on the new paper and the new mortgage and still contend for the old contract, when a new contract had been made, unless he pleads and proves sufficient facts to constitute the avoidance? In this case, after submitting the discharge of the old note upon the old agreement, which appellee expressly pleads, appellant had repudiated when the new contract was signed, and, without charging the jury any other theory of cancellation of the new contract, the court adjudged the cancellation of the new note and mortgage, based upon the jury's verdict.

[2] Second. We admit it has been hard for us to determine upon what theory in law the plaintiff is attempting to avoid the new obligations pleaded by him generally, and more definitely asserted by the defendant. The trial court's charge informed the jury in substance that, if plaintiff sold the land and defendant promised to compensate him for such services by the cancellation and delivery of the $612 note (the old paper), to find for

the plaintiff, also charged the converse agreement contended for by appellant; but ignored entirely the merger, the substitution, the new contract, or any avoidance of same resting upon any issue determinable by law for its destruction. As appellee states in his brief, "the court submitted to the jury only as to whether or not the contract alleged had been proven," which we think was fundamentally wrong, apparent upon the face of the record, and should be observed by us, without the necessity of an assignment.

[3, 4] Third. It is true that under article 422, Rev. Penal Stat., one who, having knowledge that an offense against the law has been committed, agrees with the offender, directly or indirectly, not to prosecute or inform upon him in consideration of something valuable promised to be paid, is himself guilty of an offense; and it is also the law that, "when a contract made in consideration of compounding a criminal offense is executory, the law will not enforce it, or allow any damages for its breach." Am. & Eng. Enc. of Law, p. 413. Some of the elements of that article of the statute are pleaded by him and suggested by his evidence; and such an agreement, if placed within the scope of that article, is void, because it is in contravention of public policy as well as in contravention of a criminal statute. Meadaris v. Granberry, 38 Tex. Civ. App. 187, 84 S. W. 1071 (a case growing out of the disposition of mortgaged property). But without extending the argument on this phase of the case we think the record insufficient, especially the pleading, to raise the issue; neither was it submitted to the jury.

[5, 6] Fourth. If appellee intended to avoid the new contract, on account of its execution having been procured under duress of imprisonment, measured by the law for the consideration of that issue, his pleading is irresponsive to that question, and neither was such an issue submitted to the jury. Appellee alleged a threat of criminal prosecution, but the character of the offense was not even mentioned, nor sufficient circumstances negativing the idea of a freedom of contract. Judge Neill, quoting from the Supreme Court, in the case of Perkins v. Adams, 17 Tex. Civ. App. 335, 43 S. W. 531, used this language as an expression of the rule: "But it has been held by the Supreme Court, in cases where the threats of prosecution and imprisonment were made against the party sought to be held by the contract, that the rule to be deduced from the great weight of authority is that mere threats of criminal prosecution are not sufficient to avoid a contract, but there must be a reasonable ground for creating an apprehension in the mind of a man of ordinary courage and firmness that the threats will be carried into execution, and it must also appear that the threats operated directly upon the mind of the party so as to overcome his will. Obert

v. Landa, 59 Tex. 475." We note that Judge Henry, in the same case, Obert v. Landa, quoted by Judge Neill, again decided on another appeal, 78 Tex. 33, 14 S. W. 302, seems to have modified the rule in so far as it erects a standard of resistance to be that of a man of ordinary courage and firmness; and the Court of Civil Appeals in the case of Gray v. Freeman, 37 Tex. Civ. App. 561, 84 S. W. 1107, speaking through Justice Fly, distinctly modified that part of the rule by deciding that the resisting power of the individual "under all the circumstances of the situation, and not any arbitrary standard, is to be considered in determining whether there was duress"; but in all other respects we deduce from the authorities that the rule with reference to overcoming the freedom of contract is unimpaired. Hence we think that, in order to avoid the new contract executed by the appellee, there is a fundamental issue necessary to be raised by the pleading and the evidence, and to be submitted by the court in appropriate instructions to the jury before a jury could cancel the new contract. These were matters unlitigated, upon which the very fundamental right of the case depended. The Supreme Court of this state said in the case of Holloway Seed Co. v. City National Bank, 92 Tex. 192, 47 S. W. 98: "After a careful consideration, we have concluded that to render a judgment without proper pleadings to support it is error in law, apparent upon the face of the record, which that court (Civil Appeals) should have considered without an assignment." In the case of Adams v. Faircloth, 97 S. W. 507, decided by Justice Fly of the Fourth district, the record exhibited a material alteration of a note, and that court decided that it was an issue so prominent that the very right of the case depended upon it, and, as the evidence was uncontradicted, the court reversed and rendered the cause without assignment. Upon the facts this record suggests a new contract, the avoidance of which is so necessary to have been submitted for the purpose of determining the very right of the case that a verdict of a jury, canceling such a contract without the submission of such an issue, is an error which is readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily. Chief Justice Brown in the case of Houston Oil Co. v. Kimball, 103 Tex. 104, 122 S. W. 537, in discussing fundamental error, says: "Perhaps the best expression is that it must be fundamental error, such error as being readily seen lies at the base and foundation of the proceeding and affects the judgment necessarily"—and when the court in this matter rendered judgment canceling a contract, where a controlling issue to be decided by the jury as necessary to its invalidity, has never been submitted or passed upon, the very right of the case is made to depend upon an insufficient

issue, and not the real one suggested by the record. It is analogous to some extent to the case of Railway Co. v. Hennegan, 33 Tex. Civ. App. 314, 76 S. W. 453, where the cause made by the pleading was one of tort, and the evidence raised and suggested by the record made a case of a clear breach of contract; and although fought all the way through upon the other issue, which was a wrong issue, Justice Fly could not conceive how the case could be "properly tried and judgment" rendered in such a proceeding, and reversed and remanded the cause upon fundamental error unassigned.

Fifth. The error upon which we reverse and remand this cause is not assigned in this court. It seems the Supreme Court of this state, as to some cases, is questioning its power to sustain fundamental error where the fundamental error is not assigned in the Court of Civil Appeals, however, holding in the case of Brewing Co. v. Templeman, 90 Tex. 281, 38 S. W. 28, that "the Court of Civil Appeals may reverse for error apparent upon the face of the record, though not assigned," and, in effect, holding that our courts have the same power formerly existent in the Supreme Court, which frequently exercised its power of reviewing fundamental error without a specification of the point. Our divergence in this respect, as to our power and the power of the Supreme Court in matters of this kind, is academic, and we merely advert to it, for the reason that some confusion seems to have arisen upon the part of the bar as to the authority of the Courts of Civil Appeals, where fundamental error is not assigned, arising, we judge, from discussions on account of the Supreme Court questioning its own power in some cases in that respect where the assignment of fundamental error in the case has not been made in the Court of Civil Appeals; however, in so far as the decisions of the Supreme Court of the state bear upon our authority, with reference to unassigned fundamental error, there is an unequivocal repetition of the affirmance of our authority by that court.

Sixth. The brief of appellant contains several assignments upon matters which in view of our suggestions, if the cause is repleaded and retried, upon the additional substantive issue at the basis of the suit, we believe have become unimportant. Appellant's most prominent assignment upon the charge of the court was not even assigned as error in his motion for new trial, and the other assignments do not refer to the record showing that the trial court had the benefit of the specification of error in passing upon the motion. This court has been very indulgent in matters of this kind, but the time is near at hand when a stricter and more substantial compliance of the rules will be demanded.

Reversed and remanded.

### On Motion for Rehearing.

PER CURIAM. The motion for rehearing in the above cause, embodying appellee's argument upon said motion, having been considered by this court, and on account of the matters contained therein, is stricken from the record of the cause.